ORKIN EXTERMINATING COMPANY, INC. (Arwell Division), appellant, v. ROBERT H. BURNETT, appellee.

No. 52307.

1220

NOVEMBER 15, 1966.

REHEARING DENIED JANUARY 9, 1967.

Harris, Thoma, Schoenthal, Davis & Hockenberg, of Des Moines, for appellant.

Irish & Skinner, of Altoona, for appellee.

LARSON, J.—This suit in equity is sought to enjoin the violation of a restrictive covenant in a contract of employment entered into on January 2, 1962, between the defendant Burnett and Arwell, Inc., an exterminating company doing business in Polk County, Iowa. On May 1, 1965, plaintiff-company acquired Arwell, Inc. and became assignee of the contract involved herein.

The sole issue presented by this appeal is whether under the circumstances plaintiff is entitled to have the covenant not to

compete contained in the 1962 contract enforced by a court of equity.

The trial court held the contract had been breached by plaintiff's wrongful conduct prior to its termination, that plaintiff had not done equity, that enforcement of the covenant would be unjust and work an unjust hardship or oppression on defendant, that defendant was therefore not bound by the terms of the restrictive covenant in the contract, and concluded that injunctive relief should be denied. We cannot agree.

The 1962 employment contract, Exhibit P-1, was voluntarily executed by the parties. Both performed under its terms until February 24, 1966. Among its various provisions relating to wages, territory and duties, we find the following:

"Representative agrees that on the termination for any cause whatsoever of his employment with the Company, he will not, for a period of three (3) years, directly or indirectly engage in the same or similar or competitive line of business carried on by the Company or work for any individual, firm or corporation engaged in such business or similar or competitive line of business, nor will he in any way, directly or indirectly, attempt to hire the Company's employees, or take away any of the Company's business or customers or destroy, injure or damage the good will of the Company with its customers within a ten (10) mile radius of any city, town, village or other area in which he may have worked while employed by said Company.

\* \* \*

"Representative further agrees that in the event that the Company, its successors or assigns, shall bring an action for the enforcement of any or all provisions of this covenant not to compete, and if the Court shall find on the basis of the evidence introduced in said action that this agreement is unreasonable either as to the three-year-period or as to the area or communities covered herein, then the Court shall make a finding as to what is reasonable and shall enforce this agreement by judgment or decree to the extent of such finding.

"The parties further agree that this agreement shall remain in full force and effect for one year from date representative is employed by said Company and shall continue from year

to year thereafter except that the employment of the Representative may be terminated by either party, at anytime hereafter, by giving the other party notice of his or its intention to terminate same."

It appears that pursuant to execution of the contract defendant was given eight weeks training, which included methods of exterminating insects, bookkeeping, and general company methods of operation. He was then assigned to an established route in and near east Des Moines, where he remained until their relations were severed February 28, 1966. On February 24 and 25 defendant was advised by the plaintiff that the old contract with Arwell, Inc. would be null and void as of February 28, 1966, and that a new Orkin contract, effective March 1, 1966, slightly different, would be offered those representatives who had been working under the old contract. The terms of this contract were disclosed and discussed at a meeting held in Carroll, Iowa, February 24, 1966, but no contracts were submitted or signed at that time. The terms of the new contract were unacceptable to defendant and he refused to attend any more meetings or sign the contract offered to him. Shortly thereafter he began contacting and soliciting the accounts he had serviced for the plaintiff-company, and freely admitted starting a competing business and did successfully pirate some of his former employer's accounts.

I. Of course, our review in this equity action is de novo. Rule 334, Rules of Civil Procedure. The scope of review, we have said, is the entire action. Uptown Food Store, Inc. v. Ginsberg, 255 Iowa 462, 465, 123 N.W.2d 59, 1 A. L. R.3d 765, and citations. Defendant does not seriously challenge the legality of restrictive covenants in general, and does not question the reasonableness of the area and time limitations in this covenant not to compete.

 Contracts of employment whereby employees come into personal contact with their employer's customers and agree not to enter into competition with the business of the employer are usually held valid and enforceable, especially where the restrictive covenants are for a limited time and within a limited area. We have so held many times. See Federated Mutual

etc. Ins. Co. v. Erickson, 252 Iowa 1208, 1212, 110 N.W.2d 264, and cases cited. The rationale is that such covenants are necessary for the protection of the employer's business. Cogley Clinic v. Martini, 253 Iowa 541, 112 N.W.2d 678, and citations. In Smithereen Co. v. Renfroe, 325 Ill. App. 229, 59 N.E.2d 545, a case also involving a pest control business, the court upheld and enforced a covenant not to compete for a term of five years within the city of Chicago. In annotation, 43 A. L. R.2d 94, section 25, page 162, it is stated:

"The principle of customer-contact protection finds its expression in the general rule that the territorial restraint in a covenant not to compete will, generally speaking, be considered reasonable if the area covered by the restraint is limited to the territory in which the employee was able, during the term of his employment, to establish contact with his employer's customers."

Here that area was within ten miles of any city, town, village or other area in which the defendant may have worked while employed by the plaintiff. It was shown to include several small towns and one farm east of Des Moines, as well as the east half of Des Moines. We are satisfied the area included and the period of three years set out were not unreasonable or unfair.

II. Covenants not to compete, as a general rule, are enforceable in Iowa. Where the basic contract is fair and equitable, such covenants do not violate public policy. They include contracts between employer and employee, as well as those relating to business sales and professional services. Thus, where the restrictive covenant is reasonably necessary for the protection of the employer from loss of business caused by the acts of the employee as a result of confidential knowledge acquired by training and service in the employer's business, it is usually enforceable in equity. See Uptown Food Store, Inc. v. Ginsberg, Cogley Clinic v. Martini and Federated Mutual etc. Co. v. Erickson, all supra; Mutual Loan Co. v. Pierce, 245 Iowa 1051, 65 N.W.2d 405; Brecher v. Brown, 235 Iowa 627, 17 N.W.2d 377; and many others. Also see 28 Am. Jur., Injunctions, sections 108 and 109, pages 301–303.

■ Where, as here, the covenant not to compete is based upon an agreement to instruct, direct, hire and pay the employee a salary, and grants other benefits in return for servicing designated area company accounts, and where the contract itself recites that the covenant not to compete is a major inducement in the employment, we must conclude there was a valid consideration and this contract is not lacking in mutuality. The trial court so found and we agree. In the absence of bad faith or a showing that there was an employer intent that the employment was only to be long enough to bind the employee and prevent him from working elsewhere in competition with the employer, covenants reasonable as to time and area are generally upheld and enforced by equitable proceedings. Wark v. Ervin Press Corp., 48 F.2d 152 (7 Cir. 1931) ; Granger v. Craven, 159 Minn. 296, 199 N.W. 10, 52 A. L. R. 1356; McAnally v. Person, 57 S.W.2d 945, Texas Civ. App. (1933) ; Smithereen Co. v. Renfroe, supra; Annotation, 43 A. L. R.2d 94, section 25, page 162.

The original contract here was voluntarily executed in 1962 and performed for over four years to the apparent satisfaction of both parties. Even when plaintiff-assignee became a party to the contract in May 1965, the relationship appears to have been satisfactory and was faithfully performed by each. Thus, unless plaintiff has forfeited or lost some rights, has breached the agreement in some material aspect, or has done something unfair or unjust to defendant in relation to the agreement, a court of equity would not be justified in refusing to enforce this restrictive covenant. Obviously it is defendant's burden to prove such breach or misconduct in order to invoke the discretionary power of the equity court, as he is the one who asserts it. Cogley Clinic v. Martini and McAnally v. Person, both supra.

■ III. It would appear, then, the nub of this controversy is whether the evidence adduced is sufficient to sustain a finding that plaintiff breached the original contract prior to its legal termination, or that its conduct in terminating the old contract and in requiring a new and different one to retain an employee-employer relationship was so unreasonable and unjust as to justify the refusal of equitable relief under the clean-hands doc-

trine. In its letter of February 25, 1966, to all Arwell representatives, district managers and supervisors, which was sent to defendant, it stated:

"Enclosed is your new employment contract, which you'll note became effective on March 1, 1966. By now your District Manager or Supervisor has explained the new servicemen's pay arrangement to you, and we sincerely hope that you will note the increased guarantee and also understand the new incentives wherein you can increase your income.

"Mr. Earl Geiger, head of the Arwell/Orkin organization, has asked that we standardize our employment contracts. With this in mind he has requested that we use the standard Orkin Employee Contract. The Orkin and Arwell Employee Contracts are quite similar except that the Orkin Contract has a two-year restrictive clause while the Arwell Contract has a three-year restrictive clause.

"We are planning a series of meetings for all employees. These meetings will be held within the next two weeks. We will discuss in detail the Pollins Retirement Plan and the New Group Life and Hospitalization Plan (Excellent Plans), New Termite Control Program, New Advanced Servicemen's Retirement Course, New Serviceman Incentive Pay Program, 1966 Sales and Advertising Plans, and any other subject on which you wish additional information.

WE WILL BE THERE TO SERVE YOUR CUSTOMERS.

\* \* \*

"As soon as all contracts are returned, we will mail them to Mr. Geiger's office for signature. You should receive your duplicate signed copy within two weeks.

"Let's set a target date for having all contracts back in Waukegan on or before Wednesday, March 2. Thanks for your cooperation . . . Looking forward to seeing you soon."

The trial court thought this was a breach of the old contract and was unfair. Among others, it cited and relied upon the cases of Webb v. Welcome Wagon, Inc., 255 S.W.2d 459 (Ky. 1953), Smith Baking Co. v. Behrens, 125 Neb. 718, 251 N.W. 826, and McAnally v. Person, supra. In the Webb case, presented

on the pleadings, the court announced the proposition that if the evidence sustained the allegation that the company breached a material provision of the contract of employment by dividing exclusive territory given the employee prior to the termination of his contract, the company could not enforce by injunction the employee's covenant not to engage in competing business, even though the company could have terminated that contract at will. The other cases announce similar propositions stating each case must be determined under its own revealed circumstances. Securities Acceptance Corp. v. Brown, 171 Neb. 406, 416, 106 N.W.2d 456 (1960).

We have no quarrel with these pronouncements. None, however, holds that if the company in good faith had terminated the employment, as it could have done, *prior* to the territory division, there would have been a breach of contract and a basis for refusing injunctive relief. While there may be situations where the parties cannot agree on mutual changes in their contract and the company uses its right to terminate to force the employee to accept those changes under penalty of losing his job and his right to compete, we do not believe that is the situation in the case before us.

Here the company desired to change all representative and supervisory contracts to conform to the Orkin contracts rather than the old Arwell agreements, and it does not appear they substantially changed the duties or the pay employees received prior to the termination of the old contracts. Defendant refused to sign the new contract offered to him. This he had a right to do and, in doing so, he decided for himself whether the changes were good or bad for him. But whether they were substantial and material so as to infer bad faith is for the court to decide. We can find nothing unfair or unjust in the company's act in terminating the old contracts. It complied with the contract and gave the required notice prior to the termination date. The fact that it intended to reemploy its representatives alone is not evidence of bad faith. Defendant was offered employment in the same territory under a new contract, which apparently was considered fair and just by the other former representatives who accepted the terms of the new con-

tract. It is true under the proposed contract defendant was relieved of sales duties, was required to use a company furnished car rather than get mileage on his own, and lost the opportunity to earn a bonus for extra production, but his base pay was raised and he was treated no differently from all others in the organization. He was not singled out. This showing, we think, is insufficient to sustain a finding of unfair or unjust conduct or of a preconceived employer intent to injure such as would justify refusal of the relief prayed.

On the other hand, the plaintiff merely followed the mutually-accepted contract provisions, which provided that the company or the employee might terminate the contract by giving notice to the other. This right was not exclusive with the employer. Defendant had the same right. In this regard there was complete mutuality of privilege and right. Granger v. Craven, supra, 159 Minn. 296, 199 N.W. 10, 52 A. L. R. 1356. In Granger the court pointed out the controlling consideration against the argument of inequity and lack of consideration was that the employee had worked under the contract for two years and, until the notice of termination was served, both parties were content. It was also pointed out that if the employer had taken undue advantage of the employee by terminating the agreement shortly after its execution, it would present a much more evident basis for a denial of equitable enforcement of the covenant.

Although it is true the parties here had been working under an agreement which was to "remain in full force and effect for one year" and continue from year to year thereafter, we find nothing to indicate that provision avoided the right of either party "for any cause" to terminate the agreement. There is no evidence that this privilege and right was not exercised here. If this were not so, the only time it could be enforced would be at the anniversary or on January 2d of each year. We cannot so interpret this agreement nor attribute bad faith to either party when election is made to terminate the agreement at some other time. We are satisfied defendant violated the covenant without just cause attributable to plaintiff.

Although it has been held that an injunction will

not issue when the benefit to plaintiff is slight and the damage to defendant will be great, nevertheless it is clear that where there is a violation of a plain right of the complainant and his injury is regarded as irreparable, he is ordinarily entitled to an injunction even though the injury is relatively small as compared with the injury which the defendant will suffer as a result of the issuance of the writ. McAnally v. Person, supra. Here the record shows defendant had pirated about one tenth of the customers he serviced for plaintiff, amounting to some $1100 per year, and plaintiff's route and income were reduced accordingly. As he continues to pirate these customers, plaintiff's injury will increase.

IV. Appellee contends this is an executory contract for personal services and, as such, it was not assignable to plaintiff. It is true, as a general rule an executory contract for personal services is not assignable by either party unless the contract so provides or unless the other party consents thereto or ratifies the assignment or waives his right to object. Des Moines Blue Ribbon Distributors, Inc. v. Drewrys Ltd., 256 Iowa 899, 910, 129 N.W.2d 731, and citations. We cannot agree that there is no evidence in this record of any of these exceptions. While this executory contract is for personal services, it is clear from the terms of the contract itself that assignments were contemplated and permitted. Twice it refers to the terms "successors or assigns" in considering the rights of the parties. Then it must also be recalled that from May 1, 1965, until the date of termination, both parties recognized and proceeded under the terms of that contract. There is no merit in the contention that plaintiff has no standing to bring this suit on the restrictive covenant.

V. Since we have concluded plaintiff did not breach this contract and did not unjustly or unfairly mistreat defendant so as to bar its right to maintain this suit for injunction, and since we otherwise have found the provisions of the covenant reasonable and proper, a decree must issue enjoining the defendant, Robert H. Burnett, from engaging directly or indirectly in the same or similar or competitive line of business as that carried on by the plaintiff-company, or from working for any individual,

firm or corporation engaged in such business or similar or competitive line of business, and from in any way, directly or indirectly, taking away any of the company's business or customers, or destroying, injuring or damaging the good will of the plaintiff-company with its customers within a ten-mile radius of any city, town, village or other area in which defendant may have worked while employed by plaintiff, for a period of three years.

Although the trial court found plaintiff had not established its right to damages and denied recovery for alleged damages, we feel there was substantial evidence of some damage to plaintiff by defendant's acts after the termination of his employment with plaintiff, and believe the case should be remanded for a determination thereof. For this purpose and for a decree in conformance with this opinion, the case is—Reversed and remanded.

All JUSTICES concur except THORNTON, J., not sitting.