**DAIN BOSWORTH INCORPORATED,**
Plaintiff-Appellee,

v.

**Richard BRANDHORST,**
Defendant-Appellant.

No. 83–1008.

Court of Appeals of Iowa.

Sept. 6, 1984.

Thomas M. Knepper, Chicago, Ill., and W. David Tyler, Waterloo, Iowa, for defendant-appellant.

E.J. Gallagher, III, of Gallagher, Langlas & Gallagher, P.C., Waterloo, and Edward J. Pluimer and Janet S. Sanderson of Dorsey & Whitney, Minneapolis, Minn., for plaintiff-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

SCHLEGEL, Judge.

Petitioner, Richard Brandhorst, appeals the trial court's decree enjoining him from violating the terms of a noncompetition agreement. He asserts that no injunctive relief should have been granted because the noncompetition agreement does not further legitimate business purposes. He also asserts the time and distance restrictions of the agreement are unreasonable. We affirm.

On June 26, 1981, Brandhorst and Dain Bosworth, a securities dealer, entered into an employment contract. As part of that contract, Dain Bosworth agreed to train Brandhorst to be a stockbroker. In consideration of the training, Brandhorst signed an agreement not to compete. The agreement provided that for ninety days following termination of employment Brandhorst could not accept employment or other consideration from competing securities deal-

ers within thirty miles of any Dain Bosworth office in which he worked. The agreement also prohibited Brandhorst, for 90 days following termination, from soliciting Dain Bosworth customers with whom he had dealt while employed with Dain. In addition, the noncompetition agreement contained a clause requiring Brandhorst to submit all disputes about the noncompetition agreement to arbitration before the New York Stock Exchange, Inc.

In August of 1981, Dain sent Brandhorst to Minneapolis for four months of training. Brandhorst's training cost Dain more than $20,000. After completing the training, Brandhorst went to work for Dain in Waterloo.

On April 28, 1983, only 16 months after completing Dain's training program, Brandhorst voluntarily terminated his employment with Dain. At the time he quit, Brandhorst already had an employment agreement with Shearson/American Express. That agreement provided for Brandhorst to work in the Shearson office in Marshalltown for ninety days, after which he would be transferred to Shearson's Waterloo office. On April 29, 1983, Brandhorst and members of Shearson's Waterloo office met and drafted a solicitation letter. The letter was later sent to customers with whom Brandhorst had dealt while at Dain.

Dain Bosworth learned of the solicitation letter and on May 9, 1983, petitioned for an injunction against Brandhorst. A temporary injunction was granted. A trial was held. The trial judge found the noncompetition agreement to be reasonable under the factual situation and to be an enforceable contract. Consequently, the judge rendered the following judgment and decree:

[T]he injunction prayed for restraining Defendant Brandhorst from violating the terms of the noncompetition agreement for a period of 90 days following April 28th, 1983, is ORDERED, and he shall not engage directly or indirectly in the sale or trading of investment securities or in the business of a broker, dealer, or investment banker within 30 miles of the Dain Bosworth Incorporated office in

Waterloo, Iowa, and he shall not directly or indirectly solicit or aid on behalf of any other security broker or investment banker other than Dain Bosworth Incorporated.

Respondent Richard Brandhorst shall return to the Plaintiff all copies of information and client lists which he obtained while employed by Plaintiff, which can be identified as accounts he was serving while a registered representative employed by the Plaintiff.

Such list, upon the expiration of 90 days as above set out, shall be returned to Defendant Brandhorst upon his request.

Brandhorst filed notice of appeal. Dain Bosworth then filed a motion to dismiss the appeal on grounds of mootness.

■ I. *Mootness.* A case is considered moot when "the issues have become academic so that judgment, if rendered, will have no practical legal effect upon the existing controversy." *City of Dubuque v. PERB,* 339 N.W.2d 827, 831 (Iowa 1983). The injunction at issue expired July 29, 1983, and a decision of this appeal will have no legal effect upon the controversy about the injunction in this case. However, Brandhorst asserts he has a claim for damages resulting from the injunction, which he will raise, and can only raise, in arbitration proceedings. He also asserts the damages claim will be affected by the decision of this appeal. Dain argues that the damages claim was a compulsory counterclaim under Iowa Rule of Civil Procedure 29 and that Brandhorst's failure to plead that claim bars any action upon it. The issue of mootness, then, turns on whether the damages claim is barred by Iowa Rule of Civil Procedure 29, or whether the arbitration clause of Brandhorst's agreement removes the damages claim from the scope of the counterclaim rule.

■ The contract between Brandhorst and Dain was a contract involving interstate commerce. *See Bache Halsey Stuart Shields, Inc. v. Moebius,* 531 F.Supp. 75, 76 (E.D.Wisc.1982); *Ross Stebbins, Inc. v. Nystrum,* 422 So.2d 1105, 1106 (Fla.Dist.

Ct.App.1982). Thus, the arbitration agreement is valid under section 2 of the Arbitration Act, 9 U.S.C. § 2 (1982), which preempts inconsistent state law. *Kroog v. Mait*, 712 F.2d 1148, 1152–53 (7th Cir.1983); *Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed*, 405 So.2d 790, 792–93 (Fla.Dist.Ct.App.1981). Because the valid arbitration agreement requires Brandhorst to submit his damage claim to arbitration, he cannot bring the claim before an Iowa court. *See Ottumwa Education Association v. Ottumwa Community School District*, 297 N.W.2d 228, 232 (Iowa Ct.App. 1980).

Brandhorst's inability to raise his damage claim in court removes that claim from the ambit of the compulsory counterclaim rule, Iowa Rule of Civil Procedure 29. Rule 29 states, "A pleading must contain a counterclaim for every cause of action then matured...." In *Stoller Fisheries, Inc. v. American Title Insurance Co.*, 258 N.W.2d 336, 342 (Iowa 1977), the court said, "Under rule 29 a claim matures when the holder thereof is entitled to a legal remedy." Brandhorst's damage claim is unmatured because the arbitration agreement prevents him from obtaining a legal remedy for his claim. Therefore, the claim is not barred by Iowa Rule of Civil Procedure 29 and this case is not moot.

**II. The Noncompetition Agreement.** This action is in equity and we review de novo. *Ma & Pa, Inc. v. Kelley*, 342 N.W.2d 500, 501 (Iowa 1984). The applicable principle of law was stated as follows in *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 381 (Iowa 1983) (citations omitted):

> The general rule in Iowa is that we will enforce a noncompetitive provision in an employment contract if the covenant is reasonably necessary for the protection of the employer's business and is not unreasonably restrictive of the employee's rights nor prejudicial to the public interest.... Essentially, [this rule requires] us to apply a reasonableness standard in maintaining a proper balance between the interests of the employer and the employee. Although we must afford fair protection to the business interests of the employer, the restriction on the employee must be no greater than necessary to protect the employer. Moreover, the covenant must not be oppressive or create hardships on the employee out of proportion to the benefits the employer may be expected to gain.... The burden of proving reasonableness is upon the employer who seeks to enforce such a covenant.

Applying this rule, we conclude the trial court correctly found that the plaintiff, Dain Bosworth, met its burden.

Dain had the initial burden of proving the noncompetition agreement was reasonably necessary to protect its business. *See Iowa Glass, id.; Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 373 (Iowa 1971). One way to meet this burden is to show that the employee received from his employer "special training or peculiar knowledge that would allow him to unjustly enrich himself at the expense of his former employer." *Iowa Glass*, 338 N.W.2d at 382. Dain met this initial burden by showing that the noncompetition agreement seeks to protect Dain's $20,000 investment in training Brandhorst to be a broker. *See Orkin Exterminating Co. v. Burnett*, 259 Iowa 1218, 146 N.W.2d 320 (1967) (enforcing noncompetition agreement where employee given eight weeks training in exterminating insects and methods of operation); *Cogley Clinic v. Martini*, 253 Iowa 541, 112 N.W.2d 678 (1962) (upholding noncompetition agreement where it cost clinic $10,000 to establish a new doctor).

The time and area restrictions of the noncompetition agreement were ninety days and thirty miles. In view of the time and area restrictions upheld in *Cogley*, 253 Iowa 541, 112 N.W.2d 678 (three years and twenty-five miles), and *Orkin*, 259 Iowa 1218, 146 N.W.2d 320 (three years and ten miles), and of the facts of this case, we conclude the trial court correctly determined the restrictions at issue were reasonable.

The noncompetition agreement is not oppressive and did not create disproportionate hardships for Brandhorst. He was employed as a broker during the ninety-day period for a salary of $4,000 a month and was compensated for the expense of commuting to Marshalltown. Nor is the noncompetition agreement prejudicial to the public interest. There are five brokerage houses serving Waterloo. Enforcement of the agreement did not significantly reduce competition in the business of selling securities in Waterloo.

Brandhorst also asserts that the injunction granted was overly broad. We find that assertion to be without merit.

AFFIRMED.