Gayle LEMMON d/b/a Do–Rite Pest
Control Company, Appellant,

v.

Jack P. HENDRICKSON, Jr., and Brad
Golay d/b/a Revenge Pest Control,
Appellees.

No. 96–99.

Supreme Court of Iowa.

Feb. 19, 1997.

Jerry C. Estes, of Estes Law Firm, Fort
Dodge, for appellant.

David L. Updegraff of David L. Updegraff,
P.C., Sioux City, for appellee Golay.

Joseph B. McCarville, Fort Dodge, for ap-
pellee Hendrickson.

Considered by LARSON, P.J., and
NEUMAN, SNELL, ANDREASEN, and
TERNUS, JJ.

SNELL, Justice.

Appellant, Gayle Lemmon, appeals from an
order of the district court dismissing her
complaint against the appellees for injunctive
relief and damages from alleged breach of
employment contract. We affirm.

## I. Background Facts and Procedure

Gayle Lemmon is the owner of Do–Rite Pest Control Company, located in Dakota City, Iowa. Do–Rite provides pest control services to the surrounding rural community. From 1990 to 1992, appellee Jack Hendrickson worked as a full-time service technician for Do–Rite. As part of his employment, Hendrickson provided service to Do–Rite's customers for eradication of birds, moles, gophers, and other pests. Do–Rite supplied Hendrickson with a specialized tool, developed and used by the company, for baiting birds in the rafters of farm buildings. Use of this pole was a significant marketing tool in Do–Rite's solicitation of new business.

In August 1992, Hendrickson terminated his employment with Do–Rite and entered into business for himself selling feed fortifier. On September 1, 1994, after the feed business proved to be unprofitable, Hendrickson and appellee Brad Golay commenced a joint venture, Revenge Pest Control, located in Coon Rapids, Iowa. Revenge also provided rural pest control service, with Hendrickson performing the actual field work for the customers and Golay primarily providing the capital. In the course of its business, Revenge serviced seven of Do–Rite's former customers. At one point, Hendrickson attempted to construct a bird pole similar to the one utilized by Do–Rite, but abandoned the effort shortly thereafter when it appeared replication was not practical.

In January 1995, Lemmon filed a lawsuit against Hendrickson and Golay seeking injunctive relief and damages for alleged breach of an employment contract signed by Hendrickson while working for Do–Rite. The contract contained a two-year non-compete provision and prohibited disclosure of certain trade secrets and customer information after the termination of employment. Lemmon alleged that Hendrickson misappropriated trade secrets involving Do–Rite's customer list and its telescopic bird pole, in violation of the agreement and of the common law.

On December 18, 1995, the district court entered a ruling dismissing Lemmon's petition. The court concluded that the employment agreement did not prohibit Hendrickson from servicing former customers after the two-year period had lapsed. The court also determined that the bird pole did not constitute a trade secret subject to protection under common law or the employment contract. It is from this order that plaintiff appeals.

## II. Standard of Review

As this case was tried in equity, our review on appeal is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

## III. Issues on Appeal

### A. Bird Pole

Lemmon contends that Revenge has misappropriated Do–Rite's bird pole device, which she alleges is a trade secret under the common law. She asserts that its status as a protected trade secret and Hendrickson's past attempt to duplicate it necessitates an injunction. We disagree.

There are three recognized prerequisites for relief based on the appropriation of a trade secret: (1) existence of a trade secret, (2) acquisition of the secret as a result of a confidential relationship, and (3) unauthorized use of the secret. *Basic Chems., Inc. v. Benson,* 251 N.W.2d 220, 226 (Iowa 1977). The plaintiff has the burden to establish each of these elements by a preponderance of the evidence. *Id.*

The parties disagree over whether the bird pole sufficiently constitutes a trade secret such that it falls within the statutory and common law protection. But assuming, arguendo, that it can be classified as such, we find that Lemmon has failed to meet the burden of proof on the third element. There is no indication in the record that Revenge has engaged in unauthorized use of the bird pole.

The trial court found there was no evidence that Hendrickson had used the pole or successfully duplicated its design while at Revenge, or that he intended to do so in the future. There was credible testimony that

although Hendrickson did at one time attempt to replicate the pole, he abandoned those efforts after replication proved to be infeasible. There is insufficient evidence to prove that any misappropriation occurred.

Lemmon correctly notes that section 550.3(1) of the Iowa Code empowers a court to award an injunction for "actual or threatened misappropriation" of a trade secret. Iowa Code § 550.3(1) (1995). But in this case, we find that there was neither actual nor threatened appropriation. Even if the bird pole was found to be a trade secret, an injunction would not be warranted in this case. Hendrickson testified that he has no further plans to attempt to use the telescopic pole. As we have previously noted:

> "Equity interposes by injunction to prevent future rather than past acts, and so acts and practices will not, as a rule, furnish a basis for injunctive relief when they have been discontinued or abandoned before institution of the suit to restrain them, or even after such suit is begun, particularly where there is nothing to indicate a probability that they will be resumed...."

*Conley v. Warne*, 236 N.W.2d 682, 686 (Iowa 1975) (quoting 42 Am.Jur.2d *Injunctions* § 5, at 731 (1969)).

### B. Customer List

Lemmon further alleges that Revenge has impermissibly used Do–Rite's customer list to solicit new business. This claim is based both on an assertion that Do–Rite's customer list should be protected under the common law as a trade secret and that the employment agreement signed by Hendrickson prohibits the disclosure of the list to competitors.

The trial court found that the list was not a trade secret and that the employment agreement only prohibited competition for two years. The court further found that while the agreement forbade the disclosure of the list to third parties, it did not prohibit Hendrickson from servicing the former customers himself. We agree with the trial court's determination of this issue.

### 1. Trade Secret

Lemmon asks us to consider whether the customer list is afforded protection as a trade secret under common law. We have previously noted that a customer list can be a protected trade secret under certain conditions. *See Basic Chems.*, 251 N.W.2d at 230. But we need not reach the issue of whether this particular list can be classified as a trade secret. There is no indication in the record that Hendrickson either appropriated the list for his own use or disclosed its contents to third-party competitors. Although it is undisputed that Hendrickson failed to return any customer lists in his possession upon termination of his employment, Lemmon offers no proof that Hendrickson retained a list to use to Do–Rite's disadvantage. Instead, Lemmon merely asserts, without support in the record, that Revenge used the list to solicit Do–Rite's customers two years after Hendrickson left.

The trial court noted Hendrickson's credible testimony that he did not retain a copy of the list upon leaving and that he does not intend to solicit business from it. Although Revenge provides pest control services to seven of Do–Rite's former customers, there is no evidence that these clients were gained through misappropriation of Do–Rite's customer list. Rather, Hendrickson testified he remembered the names of some former customers and solicited from that recollection. He further testified that Revenge operates in a different locale than Do–Rite and therefore, from a geographical standpoint, there would be very little incentive to solicit Do–Rite's customers.

We note the Second Restatement of Agency which sets forth the expectations of an agent after termination of employment, as it relates to competition and solicitation of former customers:

> Unless it is otherwise agreed, after the termination of the agency, the agent:
> (a) has no duty not to compete with the principal;
> (b) has a duty to the principal not to use or to disclose to third persons, on its own account or on account of others, in competition with the principal ... trade secrets, written lists of names, or other similar

confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent is entitled to use general information concerning the method of business of the principal *and the names of the customers retained in his memory,* if not acquired in violation of his duty as an agent....

Restatement (Second) of Agency § 396 (1958) (emphasis added).

There is no evidence that the attainment of seven of Do–Rite's customers was a product of anything else than Hendrickson's utilizing his recollection of those people who had a need for pest control. Lemmon provides no evidence that Revenge actually "used or disclosed" the customer list. This fact, coupled with the credible testimony that Revenge does not intend to solicit Do–Rite's former customers any further, convinces us that neither an injunction nor damages are warranted under common law. Thus, whether the customer list constitutes a trade secret and enjoys common law protection is not determinative in this case and need not be decided.

### 2. Employment Agreement

■ Lemmon's second assertion is that the employment agreement, signed by Hendrickson while employed by Do–Rite, prohibited him from soliciting or servicing former customers. The agreement reads, in pertinent part:

2. [Employee] will not, ... at any time after termination of said employment divulge or reveal to any person, firm or corporation any of the ... trade secrets of the Employer ... or any lists of customers or contracts or any information whatever concerning them or any part of them.

3. Upon leaving the employ of the Employer for any reason whatsoever, the Employee will deliver up and surrender to the Employer all ... documents of every kind and nature whatsoever in his possession pertaining to the business of the Employer or to the Employer's methods [or] ... customers, ... and that he will at no time make copies of the same for himself; or for the use of any other person.

4. The Employee covenants and agrees that for a period of two years after the termination of this agreement ... that employee will not, directly or indirectly, ... solicit or attempt to solicit business from ... or perform any services or work for any customers of the Employer.... The Employee agrees that the violation of this restrictive covenant will subject him to injunction to restrain such violation and damages resulting therefrom.

5. The Employee agrees not to divulge any information secured by him in connection with said business to any competing party ... and further agrees not to divulge to any competing party ... the names of any of the customers of Employer, or any information as to the names of any of the customers of the Employer,....

Hendrickson acknowledges that upon termination of his employment with Do–Rite, he did not return any customer lists, claiming that he had none. But Lemmon does not seek damages for the mere failure to return the list. Rather, she seeks relief on the premise that Hendrickson violated the agreement by soliciting former customers and allegedly divulging their names to a competing business (Revenge). The essence of Lemmon's argument is that the employment agreement prohibits solicitation of Do–Rite's customers at any time in the future.

The trial court found there was credible testimony that Hendrickson did not copy or otherwise use the customer list to Do–Rite's disadvantage. Lemmon offers no evidence to contradict this testimony. The court found that the solicitation of former customers was permissible because it occurred outside of the two-year limitation and was not done through appropriation of Do–Rite's customer list. We agree with the trial court's determination that the agreement only prohibits Hendrickson from disclosing the customer list to competitors, not from servicing those customers himself after the two-year period has elapsed.

Revenge Pest Control was started by Hendrickson, thus the only divulging that could have occurred was to his own business. There are no provisions in the contract prohibiting Hendrickson from directly competing with Do–Rite after the two-year period

expired. Given the absence of evidence that Hendrickson used the customer list to Do–Rite's disadvantage, we find that he has complied with the terms of the employment agreement.

Furthermore, to require that Hendrickson, under the terms of the contract, may never solicit former customers constitutes an unreasonable restraint of competition. We have previously noted that in deciding whether to enforce a restrictive covenant, we must consider, inter alia, whether the agreement is unreasonably restrictive of the employee's rights. *See Lamp v. American Prosthetics, Inc.,* 379 N.W.2d 909, 910 (Iowa 1986); *Iowa Glass Depot, Inc. v. Jindrich,* 338 N.W.2d 376, 381 (Iowa 1983). Covenants not to compete are unreasonably restrictive unless they are tightly limited as to both time and area. *Pathology Consultants v. Gratton,* 343 N.W.2d 428, 434 (Iowa 1984); *Jindrich,* 338 N.W.2d at 381. The two-year non-competition period agreed to in the employment contract is reasonable, but Lemmon's attempt to enforce the agreement beyond that time period is not. To construe the employment agreement before us as prohibiting solicitation and servicing of Do–Rite's customers indefinitely would be an impermissible restriction.

Revenge Pest Control complied with the two-year non-compete provision. The evidence indicates that Hendrickson, through his recollection of customers he had serviced while employed by Do–Rite, solicited only seven out of 350 to 400 of Do–Rite's customers. There is also credible evidence that Revenge does not intend to solicit any other customers who were serviced by Do–Rite at the time Hendrickson terminated his employment. Therefore, there is insufficient evidence to grant an injunction or award damages. The trial court's order dismissing the complaint is affirmed.

**AFFIRMED.**