AG SPECTRUM COMPANY, Plaintiff,

v.

Vaughn ELDER, Defendant.

No. 3:15-cv-00007-JEG

United States District Court,
S.D. Iowa, Davenport Division.

Signed 06/10/2016

968

Elliott R. McDonald, III, Ryan Frederick Gerdes, McDonald Woodward & Carlson PC, Davenport, IA, for Plaintiff.

Mark A. Tarnow, Bozeman Neighbour Patton & Noe, Moline, IL, for Defendant.

## ORDER

JAMES E. GRITZNER, Senior Judge, U.S. DISTRICT COURT

This matter is before the Court on a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 filed by Defendant Vaughn Elder (Elder), which Plaintiff Ag Spectrum Company (Ag Spectrum) resists, and a cross-Motion for Partial Summary Judgment as to breach of contract filed by Ag Spectrum, which Elder resists. A hearing on a discrete issue pertaining to the Motions was held on March 15, 2016, at which attorney Elliott McDonald III was present representing Plaintiff and attorney Mark Tarnow was present representing Defendant. The Motions are fully submitted and ready for consideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following relevant facts are either undisputed or viewed in the light most favorable to the non-moving party.[1]

Ag Spectrum sells agricultural products and crop management tools, including tools for advanced soil testing and analysis. Ag Spectrum has acquired and developed scientific knowledge that it uses to recommend agricultural products for its customers. On July 10, 2000, Elder submitted an application for employment as an Ag Spectrum sales representative, became a dealer the same day, and later became an area manager.

In the fall of 2005, Elder and Ag Spectrum entered into an agreement (the Agreement), under which Elder became Ag Spectrum's independent contractor. The Agreement contained a covenant not to compete (the Non-Compete Clause), which prohibited Elder, during the term of the Agreement and for three years after its termination, from engaging in Ag Spectrum's line of business with Ag Spectrum's "customers." The Agreement defines customers as

all prospective customers who have been previously contacted by [Ag Spectrum], those who have purchased from [Ag Spectrum], all present and past customers of [Ag Spectrum], all persons or

---

1. See Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.2011) (en banc).

entities to which [Ag Spectrum] is in the process of providing a quotation for services to be possibly rendered to the customer, and to include those persons or entities who have contacted [Ag Spectrum] concerning the possibility of [Ag Spectrum] providing certain services.

Pl. SAF ¶ 8; Def. App. 9. The Agreement contains a choice-of-law provision that states the Agreement is governed by Iowa law.

The Agreement states that Elder was engaged in his own business independent from Ag Spectrum. During his relationship with Ag Spectrum, virtually all of Elder's sales were made to people with whom Elder had developed relationships over the course of his life or through his dealers. It is undisputed that, with two exceptions, no customer to whom Elder sold was made known to him by Ag Spectrum, and Elder did not succeed to the customers of any Ag Spectrum salesperson. Elder conducted his business through a corporation, Elder Fertilizer, Inc., of which Elder was the sole shareholder. Elder owned all equipment needed to operate his business. Elder owned, operated, and managed his own warehouse in Kansas where he stored products for sale, and also operated a railroad tank facility. Ag Spectrum did not provide Elder any salary, employment benefits, health or retirement benefits, equipment, or insurance under the Agreement. Rather, Elder would purchase products from Ag Spectrum and sell them to customers at a mark-up. If Elder sold more than $1 million in Ag Spectrum products in a year, Ag Spectrum would pay Elder a $1500 bonus. Elder was required to pay Ag Spectrum for the product delivered to his customers regardless of whether Elder had received payment for the product.

In the course of their business relationship, Ag Spectrum gave Elder training and support including plant and soil science education, marketing materials, and support for accounting, marketing, inventory management, and distribution. Ag Spectrum also provided training to Elder's dealers, and gave Elder advice regarding the soils and climate in Elder's sales territory. In addition, Elder received training, assistance, and support for marketing Ag Spectrum products. Ag Spectrum also arranged for a 53,000-gallon tank located in Kansas to be available for Elder's use, and made leased rail cars available to Elder, although Elder was required to pay freight for product shipped on the rail cars and for cleaning and operating the 53,000-gallon tank. Elder acknowledges he received these services but contends they were not valuable to him.

Elder ended his relationship with Ag Spectrum effective September 30, 2012, and thereafter ceased selling Ag Spectrum products. Since late 2012 or early 2013, Elder has been selling an Ag Spectrum competitor's products to customers that had previously purchased Ag Spectrum products from him. Most customers in Elder's former territory no longer purchase Ag Spectrum products. Elder continues to compete with Ag Spectrum. At the time this action was filed, the term of the Non-Compete Clause had nearly expired, and it has now expired.

On January 12, 2015, Ag Spectrum filed a Complaint against Elder asserting a claim for breach of the Agreement and requesting permanent injunctive relief.[2] On July 28, 2015, Ag Spectrum filed an Amended Complaint, ECF No. 27, to add a request for an equitable extension of the term of the Non-Compete Clause. On Oc-

---

2. The claim is founded upon breach of the Covenant Not to Compete; therefore any other possible breach of the Loyalty/Incentive Agreement is not before the Court. See ECF No. 48-3, Agreement, Def. App. 5-6 and 9.

tober 22, 2015, Elder filed the instant Motion for Summary Judgment, ECF No. 48. On March 23, 2016, Ag Spectrum filed the instant Motion for Partial Summary Judgment as to breach of the Agreement, ECF No. 76.

## II. DISCUSSION

### A. Jurisdiction

Ag Spectrum is an Iowa corporation with its principal place of business in Clinton County, Iowa. Elder is a resident of the State of Kansas. Ag Spectrum alleges damages in excess of $75,000. Therefore, the diversity of citizenship and amount in controversy requirements of diversity jurisdiction have been satisfied, and this Court has original jurisdiction over Ag Spectrum's claims under 28 U.S.C. § 1332. Elder does not contest personal jurisdiction.

### B. Standard for a Motion for Summary Judgment

The Federal Rules of Civil Procedure authorize "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[S]ummary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Kountze ex rel. Hitchcock Found. v. Gaines, 536 F.3d 813, 817 (8th Cir.2008) (quoting Hohn v. Spurgeon, 513 F.3d 827, 829 (8th Cir.2008)). "The Court does not weigh the evidence, nor does it make credibility determinations. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material." Sam's Riverside, Inc. v. Intercon Sols., Inc., 790 F.Supp.2d 965, 974 (S.D.Iowa 2011) (citing Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is genuine if it has a real basis in the record. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir.1992) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505). The Court examines this record within that legal structure.

### C. The Parties' Cross Motions

Ag Spectrum contends it is entitled to summary judgment as to breach of the Agreement because Elder's conduct undisputedly contravened the language of the Non-Compete Clause. Elder does not argue that his conduct was contractually permitted. Instead, Elder argues the Non-Compete Clause is unenforceable under Iowa law.

 Analysis of whether a contract has been breached begins by determining whether the contract is enforceable. See Schaller Tel. Co. v. Golden Sky Sys., Inc., 139 F.Supp.2d 1071, 1080 (N.D.Iowa 2001) (addressing enforceability of the contract under Iowa law before reaching the issue of breach), aff'd, 298 F.3d 736 (8th Cir. 2002). If a contract is unenforceable, a plaintiff cannot maintain an action for breach. Restatement (Second) of Contracts § 8 (1981); see Mincks Agri Ctr., Inc. v. Bell Farms, Inc., 611 N.W.2d 270, 281 (Iowa 2000) (reversing the denial of the defendant's motion for summary judgment and for judgment notwithstanding the verdict holding the contract was unenforceable and the district court erred in ruling to the contrary); Fogel v. Trustees of Iowa Coll., 446 N.W.2d 451, 456 (Iowa 1989) (holding a contract to be unenforceable and therefore not giving rise to an action

for its breach); see also W. C. James, Inc. v. Oil, Chem. & Atomic Workers Int'l Union, 646 F.2d 1292, 1295 (8th Cir.1981) ("[A]n unenforceable contract cannot support claims of breach."). Ag Spectrum's Motion for Partial Summary Judgment as to breach of the Agreement necessarily depends on the enforceability of the Non-Compete Clause.

## D. Enforceability of the Non-Compete Clause

Given the available precedent, the legal analysis must commence with consideration of non-compete clauses in the employer/employee context and then proceed to consideration of any differences in the independent contractor circumstance. Non-compete agreements are generally disfavored in Iowa because they "are viewed as restraints of trade which limit an employee's freedom of movement among employment opportunities ...." Revere Transducers, Inc. v. Deere & Co., 595 N.W.2d 751, 761 (Iowa 1999); see also Bd. of Regents v. Warren, 760 N.W.2d 209, 2008 WL 5003750, at *4 (Iowa Ct.App. 2008) (unpublished table decision) (same). Iowa courts use a three-part test to determine whether a non-compete agreement is enforceable. First, the agreement must be reasonably necessary for the protection of the employer's business. Second, the agreement must not be unreasonably restrictive of the employee's rights. Third, the agreement must not be prejudicial to the public interest. See Revere Transducers, 595 N.W.2d at 761 (quoting Lamp v. Am. Prosthetics, Inc., 379 N.W.2d 909, 910 (Iowa 1986)); Ma & Pa. Inc. v. Kelly, 342 N.W.2d 500, 502 (Iowa 1984); Iowa Glass Depot, Inc., v. Jindrich, 338 N.W.2d 376, 381 (Iowa 1983); Ehlers v. Iowa Warehouse Co., 188 N.W.2d 368, 369 (Iowa 1971); Baker v. Starkey, 259 Iowa 480, 144 N.W.2d 889, 897 (1966); see also Moore Bus. Forms, Inc. v. Wilson, 953 F.Supp. 1056, 1062 (N.D.Iowa 1996); Curtis 1000,

Inc. v. Youngblade, 878 F.Supp. 1224, 1260 (N.D.Iowa 1995). This general rule requires courts to apply a reasonableness standard to maintain a proper balance between the interests of the employer and employee. See Iowa Glass, 338 N.W.2d at 381. Although fair protection must be afforded to the business interests of the employer, "the restriction on the employee must be no greater than necessary to protect the employer." Id. Furthermore, "the covenant must not be oppressive or create hardships on the employee out of proportion to the benefits the employer may be expected to gain." Id. "The validity of the contract in each case must be determined on its own facts and a reasonable balance must be maintained between the interest of the employer and the employee." Baker, 144 N.W.2d at 897–98.

The Court confronts a somewhat unusual situation here because covenants not to compete are typically found in employment contracts, not independent contractor arrangements. See, e.g., Revere Transducers, 595 N.W.2d at 760–61; Lemmon v. Hendrickson, 559 N.W.2d 278, 282 (Iowa 1997); Lamp, 379 N.W.2d at 910. Iowa courts have not directly addressed the enforceability of non-compete agreements against independent contractors. But cf. Farm Bureau Mut. Ins. Co. v. Osby, 707 N.W.2d 338, at *1–3 (Iowa Ct.App.2005) (unpublished table decision) (entertaining an action for breach of a non-solicitation agreement against an independent contractor, but declining to find a breach of the agreement on the particular facts of the case). Iowa courts have enforced non-compete agreements in other business relationships. See Am. Express Fin. Advisors, Inc. v. Yantis, 358 F.Supp.2d 818, 829 (N.D.Iowa 2005) (enforcing a non-compete between franchisor and franchisee); Uptown Food Store, Inc. v. Ginsberg, 255 Iowa 462, 123 N.W.2d 59, 68 (1963)(enforc-

ing a non-compete between lessor and lessee).

Most other jurisdictions that have considered this issue allow non-compete agreements with independent contractors, subject to limitations similar to those on employees. See, e.g., Eichmann v. Nat'l Hosp. & Health Care Servs., Inc., 308 Ill.App.3d 337, 241 Ill.Dec. 738, 719 N.E.2d 1141, 1146 (1999) (finding restrictive covenants in the independent contractor context more analogous to restrictive covenants in the employee context than in the sale of a business context and thus deserved the heightened scrutiny appropriate to covenants of employees); Bristol Window & Door, Inc. v. Hoogenstyn, 250 Mich.App. 478, 650 N.W.2d 670, 678 (2002) (enforcing a non-compete agreement against an independent contractor under Michigan law); Quaker City Engine Rebuilders, Inc. v. Toscano, 369 Pa.Super. 573, 535 A.2d 1083, 1087–89 (1987) (enforcing a non-compete agreement against an independent contractor under Pennsylvania law). However, a number of jurisdictions have stated that an employer will often have a lesser legitimate interest in restraining the commercial activity of independent contractors due to the nature of their business relationship. See, e.g., EDIX Media Grp., Inc. v. Mahani, No. CIV.A. 2186–N, 2006 WL 3742595, at *8 (Del.Ch. Dec. 12, 2006) (unpublished) ("The legitimate economic interests of an employer in restricting the substantially similar activities of an independent contractor will be more limited than they would be with respect to an employee."); Starkings Court Reporting Servs., Inc. v. Collins, 67 N.C.App. 540, 313 S.E.2d 614, 615 (1984) (finding it relevant, in declining to enforce a non-compete agreement, that the defendant "was truly an *independent*

contractor and not an employee of plaintiff").

■ Upon a review of Iowa law and the law of other jurisdictions that have considered the enforceability of non-compete agreements involving independent contractors, the Court concludes it need not depart from the usual method for determining enforceability of restrictive covenants in this case. It seems a reasonable distillation of existing Iowa law that non-compete agreements involving independent contractors are enforceable in Iowa but with even greater restraint than would be applied in cases involving former employees.[3]

## 1. Is the restriction reasonably necessary to protect Ag Spectrum's business?

■ "The employer bears the initial burden on the first prong of this test of showing that enforcement of the covenant is 'reasonably necessary to protect its business.'" Curtis 1000, 878 F.Supp. at 1260 (quoting Dain Bosworth v. Brandhorst, 356 N.W.2d 590, 593 (Iowa Ct.App.1984)). There must be

> some showing that defendant, when he left plaintiff's employment, pirated or had the chance to pirate part of plaintiff's business; took or had the opportunity of taking some part of the good will of plaintiff's business, or it can reasonably be expected some of the patrons or customers he served while in plaintiff's employment will follow him to the new employment.

Ehlers, 188 N.W.2d at 373 (quoting Mut. Loan Co. v. Pierce, 245 Iowa 1051, 65 N.W.2d 405, 408 (1954)).

An employer's legitimate business interests in restricting the economic activity of an independent contractor will typically be

---

**3.** This does not preclude the possibility of other contractual arrangements, not present herein, designed to reach a like result under the normal application of contract law.

more limited than with respect to an employee owing to the differences between the two business relationships. The independent contractor relationship is traditionally less intimate than the employer-employee relationship. See Restatement (Second) of Agency § 220 (Am. Law Inst. 1958). Independent contractors maintain greater control over the manner of their work; engage to a greater extent in a distinct occupation; and work with a less supervision, among other things. Id. Because the independent contractor relationship is further separated from an employer's enterprise than is the employment relationship, employers are less likely, for example, to invest in training their independent contractors and less likely to impart trade secret information. Additionally, independent contractors in Iowa do not reap the same benefits from employment as do employees; for example, independent contractors are not protected under Iowa's Wage Payment Collection Act, Iowa Code Chapter 91A, and thus bear greater risk in their dealings with other business entities.

■ Ag Spectrum argues the Non-Compete Clause is reasonably necessary to protect its business because Elder was the exclusive contact with customers to whom he sold Ag Spectrum products. As an initial matter, the record demonstrates that Elder was not a traditional salesman for Ag Spectrum, but instead contracted, in effect, to be an independent dealer of Ag Spectrum products. A dealer is a person or firm that purchases a manufacturer's goods for sale to others—in other words, a retailer. *Dealer*, Black's Law Dictionary (10th ed. 2014). This understanding of the parties' relationship comports with the

parties' clear intention to establish Elder as an independent contractor rather than an employee or agent. See Dailey v. Holiday Distrib. Corp., 260 Iowa 859, 151 N.W.2d 477, 484 (1967) ("One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction . . . ." (quoting Restatement (Second) of Agency § 14J (1958)). Under the Agreement, Elder contracted to "sell and represent for sale" Ag Spectrum products in his own independent business. Agreement ¶ 1, Def. App. 5, ECF No. 48-3. Elder would purchase an Ag Spectrum product, sell that product to customers he knew, and then deliver it directly without any involvement by Ag Spectrum. In this arrangement, Elder was the counterparty to Ag Spectrum's sales. Elder then sold, delivered, and collected proceeds for the sale of Ag Spectrum products on his own account. Elder, rather than Ag Spectrum, bore the risk of nonpayment in the event an ultimate customer refused. Elder, not Ag Spectrum, owned and managed the storage, transportation, and delivery equipment necessary to run his business. Once Ag Spectrum received payment from Elder in exchange for Ag Spectrum products, the transaction was complete from Ag Spectrum's perspective. Lending further weight to the conclusion that Elder was not facilitating sales between customers and Ag Spectrum but rather was conducting sales on his own behalf, the Agreement states explicitly that Elder had "no authority to enter into contracts or agreements on behalf of" Ag Spectrum, Agreement ¶ 12, Def. App. 8, ECF No. 48-3, and recognizes that Elder was "engaged in [his] own independent business," Agreement ¶ 6, Def. App. 7, ECF No. 48-3.[4]

4. Ag Spectrum attempts to dispute whether Elder was engaged in his own independent business prior to executing the Agreement by arguing Elder was not engaged in the agricultural products industry prior to becoming an Ag Spectrum dealer in 2000. This contention is irrelevant, however, because the Agreement was executed five years later in 2005, not in 2000, and no separate record is offered regarding any confidential relationship or exchange of proprietary information prior to 2005.

Therefore, the undisputed evidence in the record demonstrates that Ag Spectrum's primary business interest was in making sales to Elder, rather than ultimate users of Ag Spectrum products, and that Elder was not dealing with Ag Spectrum customers, but with his own.

Even if Elder's customers could be considered customers of Ag Spectrum for purposes of evaluating the enforceability of the Non-Compete Clause, Elder's contact with those customers would nonetheless not support enforcement of the Non-Compete Clause. It is undisputed that Elder made virtually no sales to pre-existing Ag Spectrum customers, and that Elder did not succeed to any former Ag Spectrum salesperson's customers. It is also undisputed that virtually all of Elder's sales were made to people with whom he had developed relationships outside and prior to his business dealings with Ag Spectrum. While Iowa courts frequently consider whether a former employee, after terminating the employment relationship, might retain or pirate the customers he previously served on the employer's behalf, the thrust of that consideration is whether the former employee might unjustly enrich himself at the employer's expense by exploiting "personal influence with customers *he had gained in such employment.*" Baker, 144 N.W.2d at 896 (emphasis added); see also Federated Mut. Implement & Hardware Ins. Co. v. Erickson, 252 Iowa 1208, 110 N.W.2d 264, 268 (1961) (explaining non-compete agreements may be upheld where employees come into personal contact with their employer's customers by virtue of their employment). Here, it is undisputed that Elder's relationships with his customers were established outside his business relations with Ag Spectrum. Therefore, the record suggests no risk that Elder would unjustly enrich himself at Ag Spectrum's expense by pirating business contacts he developed while in Ag Spectrum's employ.

Ag Spectrum also argues the Non-Compete Clause is necessary to protect its business practices and information made known to Elder, and to protect Ag Spectrum's investment in its products and sales system and in training Elder. An employer may show that enforcement of a non-compete agreement is reasonably necessary to protect its business by demonstrating that the employee received special training or peculiar knowledge from the employer that would "allow him to unjustly enrich himself at the expense of his former employer." Curtis 1000, 878 F.Supp. at 1261 (quoting Dain Bosworth, 356 N.W.2d at 593 (noting that employer met its initial burden by showing the non-compete agreement sought to protect the company's $20,000 investment in training defendant to be a broker)); see also Orkin Exterminating Co. (Arwell Div.) v. Burnett, 259 Iowa 1218, 146 N.W.2d 320, 323 (1966) (finding a non-compete agreement was *reasonably necessary to protect employer* due to the confidential knowledge relating to the employer's methods of operation, which the employee had acquired during eight weeks of training and service in the employer's business); Cogley Clinic v. Martini, 253 Iowa 541, 112 N.W.2d 678, 681–83 (1962) (enforcing non-compete agreement where it cost clinic $10,000 and took seven years to introduce, sponsor, and recommend the doctor). However, an employer "cannot have the covenant enforced to preclude his former employee from exercising general skill and knowledge" in the same industry. Mut. Loan Co., 65 N.W.2d at 408. Where an employer seeks to enforce a Non-Compete Clause against a salesman, Iowa courts consider that "[e]xperience, competency, and a high degree of efficiency in exploiting and selling any brand of goods are qualifications which can hardly be so rare as to require the aid of equity to prevent irreparable loss ...." Nelson v. Agro Globe Eng'g,

Inc., 578 N.W.2d 659, 663 (Iowa 1998) (alteration in original) (quoting Gossard Co. v. Crosby, 132 Iowa 155, 109 N.W. 483, 491 (1906)).

The record shows that Ag Spectrum trained Elder and his dealers to promote and sell Ag Spectrum products by teaching Elder and his dealers about Ag Spectrum products, providing Ag Spectrum marketing materials and administrative support, and offering Ag Spectrum product recommendations to Elder. Importantly, however, the record contains no indication that Ag Spectrum made any substantial financial investment in Elder's sales training–the record contains no indication of a financial investment particular to Elder–and the record also does not indicate whether the information given to Elder was confidential. Cf. Warren, 2008 WL 5003750, at *4 ("In considering whether a restriction is reasonably necessary for an employer's business, we also look to whether the employee has obtained confidential knowledge and the nature of the business and the occupation."). On this record Ag Spectrum has not shown that the Non-Compete Clause is reasonably necessary to protect its business based upon training it provided to Elder. Compare Iowa Glass, 338 N.W.2d at 382 ("[The employee sought to be restrained] received little specialized training and there were no trade secrets or exclusive customer lists which he could purloin ... [and therefore] did not receive ... any special training or peculiar knowledge that would allow him to unjustly enrich himself ....") with Orkin Exterminating, 146 N.W.2d at 323 (employee given eight weeks' training in insect extermination as well as bookkeeping methods), Federated, 110 N.W.2d at 268 (company turned over its customer list to the agent), and Cogley Clinic, 112 N.W.2d at 679–80 (clinic invested $10,000 to train a new doctor and through his association with the clinic, he became acquainted with patients, referral doctors, hospital personnel, and local procedures).

### 2. Is it unreasonably restrictive of Elder's rights?

■ "Covenants not to compete are unreasonably restrictive unless they are tightly limited as to both time and area." Revere Transducers, 595 N.W.2d at 761 (quoting Lemmon, 559 N.W.2d at 282). Other "[f]actors [the court must] consider in determining the enforceability of a non-compete agreement include the employee's close proximity to customers, the nature of the business, accessibility to information peculiar to the employer's business and the nature of the occupation which is restrained." Id.

■ Generally, enforceable non-compete agreements range in duration from two to three years. See Cogley Clinic, 112 N.W.2d at 679 (three years and 25 miles); Orkin Exterminating, 146 N.W.2d at 324 (three years and 10 miles). Non-compete agreements extending beyond five years are generally not enforced in Iowa. See, e.g., Rasmussen Heating & Cooling, Inc. v. Idso, 463 N.W.2d 703, 705 (Iowa Ct.App. 1990) (refusing to enforce 10-year non-compete agreement). Elder does not argue the three-year duration of the Non-Compete Clause is unreasonably long. Nor on this record can the Court conclude as a matter of law that the geographic coverage of the clause is unreasonably broad, because the clause does not on its face prohibit Elder from conducting business in any particular geographic area. Rather, the clause pertains to specific customers and prospective customers of Ag Spectrum products. Courts applying Iowa law have enforced restrictive covenants that prohibit solicitation of an employer's customers without geographic limitation. See, e.g., NCMIC Fin. Corp. v. Artino, 638 F.Supp.2d 1042, 1072 (S.D.Iowa 2009); Moore, 953 F.Supp. at 1064.

▆ To be enforceable, a restrictive covenant "must not be oppressive or create hardships on the employee out of proportion to the benefits the employer may be expected to gain . . . ." Dain Bosworth, 356 N.W.2d at 593. Here, the undisputed facts demonstrate that enforcement of the Non-Compete Clause would work an unreasonable hardship on Elder out of proportion to the benefit to be gained by Ag Spectrum. As already discussed, Ag Spectrum does not have a significant business interest in enforcing the Non-Compete Clause. On the other hand, enforcement of the Non-Compete Clause would work a substantial hardship on Elder, who would be barred from selling to any of the customers with whom he had established relationships over the course of his life and to whom he sold Ag Spectrum products during the term of the Agreement. Restricted in that manner, Elder would effectively need to build a customer base from scratch, which is plainly out of proportion to any benefit that would be gleaned by Ag Spectrum. Elder states that enforcing the Non-Compete Clause would disable him from conducting his business. The hardship to Elder weighs against enforcement of the clause.

### 3. Is it prejudicial to the public interest?

▆ Elder contends that Ag Spectrum has no legitimate interest in Elder's customers, and that the only purpose of the Non-Compete Clause is therefore to restrain trade. The party asserting a restrictive covenant is contrary to public policy has the burden of proof on the issue. Cogley Clinic, 112 N.W.2d at 682. While Elder asserts that the purpose of the Non-Compete Clause is to restrain trade, Elder has not offered evidence that the public would be harmed by restricting his commercial conduct.

▆ After carefully considering and weighing the interests of the parties, the Court concludes that enforcement of the non-compete clause would not be reasonable under the facts of this case. See Iowa Glass, 338 N.W.2d at 381 (noting we must "apply a reasonableness standard in maintaining a proper balance between the interests of the employer and the employee"). The record lacks evidence that would demonstrate enforcement of the clause would be reasonably necessary to protect Ag Spectrum's business. Balanced against this, undisputed evidence in the record demonstrates that the non-compete clause is unreasonably restrictive to Elder. Although the Court cannot conclude separately that enforcement of the clause would be prejudicial to the public interest, the Court finds that, in balancing the interests of Elder and Ag Spectrum, it would be unreasonable to enforce the Non-Compete Clause against Elder. While Iowa courts are empowered to modify restrictive covenants and enforce them to the extent they are reasonable, courts are not required to do so sua sponte. Lamp, 379 N.W.2d at 911. The Court concludes a piecemeal application of the Non-Compete Clause would not serve the interests of justice in this case, particularly where the clause has expired. For the above stated reasons, the Court concludes the Non-Compete Clause is therefore unenforceable, and Elder's Motion for Summary Judgment must be granted.

### E. Breach of the Non-Compete Clause

Because the Non-Compete Clause is unenforceable, Ag Spectrum cannot maintain an action for its breach. See Fogel, 446 N.W.2d at 456. Ag Spectrum's Motion for Partial Summary Judgment as to breach of the Agreement must therefore be denied.

## III. CONCLUSION

For the reasons stated, Ag Spectrum's Motion for Partial Summary Judgment, ECF No. 29, must be **denied**, and Elder's Motion for Summary Judgment, ECF No. 48, must be **granted** and the above-entitled action **dismissed**.

**IT IS SO ORDERED.**

