# CIRCUIT COURT OF ROCKINGHAM COUNTY

McGladrey & Pullen, L.L.P.,
and PBGH, L.L.P.

v.

Orville Dwight Shrader, Jr.

August 11, 2003

Case No. CH02-19119

BY JUDGE JOHN J. MCGRATH, JR.

These matters are before the Court on Defendant Shrader's demurrer challenging the legal sufficiency of all five counts of the Plaintiffs' Bill of Complaint. Plaintiffs seek to enjoin Defendant from soliciting Plaintiffs' clients, an accounting for lost income, and $550,000.00 in compensatory and liquidated damages, and $350,000.00 in punitive damages.

It is well established, in ruling on a demurrer, that the Court must accept as true all well pleaded facts and the reasonable inferences from such facts. The rule was most recently re-stated by the Supreme Court in *Riverview Farm Associates v. Board of Supervisors of CharlesCity County*, 259 Va. 419 (2000), in which the Court reiterated:

> The standard [for ruling on demurrers] of review that we apply is well established. We consider as true all material facts alleged in a bill of complaint, all facts impliedly alleged, and all reasonable inferences that can be drawn from such facts. *Moore*

*v. Maroney*, 258 Va. 21, 23, 516 S.E.2d 9, 10 (1999); *Concerned Taxpayers of Brunswick County v. County of Brunswick*, 249 Va. 320, 323, 455 S.E.2d 712, 713 (1995); *Krantz v. Air Line Pilots Ass'n, Int'l*, 245 Va 202, 204, 427 S.E.2d 326, 327 (1993).

However, a demurrer does not admit the correctness of the conclusions of law asserted in a bill of complaint. *Moore*, 258 Va. at 23, 516 S.E.2d at 10; *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a bill of complaint, but only may determine whether the factual allegations of the bill of complaint are sufficient to state a cause of action. *Concerned Taxpayers of Brunswick County*, 249 Va. at 327-28, 455 S.E.2d at 716; *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). Thus, the trial court errs in sustaining a demurrer if a bill of complaint, considered in the light most favorable to the plaintiff, states a cause of action. *W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 384, 478 S.E.2d 295, 300 (1996); *see Luckett v. Jennings*, 246 Va. 303, 307, 435 S.E.2d 400, 402 (1993).

*Id.* at p. 427.

## I. *Facts Alleged by Plaintiffs*

Plaintiff, McGladrey & Pullen, L.L.P. (hereinafter "McGladrey"), is a national accounting firm with its principal place of business in Iowa. It has operations in the Commonwealth of Virginia and, until the closing on the contracts involved in this dispute, had a professional office in Harrisonburg, Virginia. The McGladrey operation in Harrisonburg was headed by Mensel Dean, a local C.P.A., who was the head partner of the McGladrey Harrisonburg office. McGladrey had a number of additional employees and principals in the Harrisonburg office, including Defendant Shrader, who was one of its C.P.A.'s.

On January 15, 2001, McGladrey terminated its presence in Harrisonburg by closing on the Asset Purchase Agreement with its partner, Mensel Dean. In the Asset Purchase Agreement, McGladrey assigned to Mensel Dean

Harrisonburg client relationships and contracts, client files, as well as employment contracts of McGladrey, including its employment agreement with Shrader. Immediately following closing or simultaneously with the closing on the Asset Purchase Agreement with McGladrey, Mensel Dean transferred all of the assets he purchased to the accounting firm of PBGH, L.L.P.[1]

Defendant Shrader had been an employee of McGladrey in its Harrisonburg office and had entered into two separate agreements with McGladrey on December 29, 1997: one was an Employment Contract and the other was a Confidentiality and Non-Solicitation Agreement.

The Employment Agreement, which was signed by McGladrey and Shrader in December 1997 and which continued in effect until cancelled by either of the parties, has two clauses that are of particular interest. Clause 13 of the Employment Agreement provides:

> ASSIGNMENT: Employee acknowledges that services to be rendered by him or her are unique and personal. Accordingly, Employee may not assign any of his or her rights or delegate any of his or her duties or obligations under the Agreement. The rights and obligations of Employer under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Employer.

(Page 4, Exhibit A to Bill of Complaint.)

Clause 15 of the Employment Agreement provides that "this Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Iowa." (Pp. 4-5, Exhibit A to Bill of Complaint.).

The Confidentiality and Non-Solicitation Agreement (hereinafter CANS Agreement) which was also signed on December 29, 1997, contained a number of provisions restricting the activities of the Defendant after the termination of his employment. The CANS Agreement contains the following pertinent restrictions on Defendant:

---

[1] Actually, there were two sellers: McGladrey and RSM McGladrey, Inc., a Delaware corporation. Apparently, the RSM McGladrey, Inc., entity held certain assets and joined in the conveyance solely to transfer these assets. It is included under the McGladrey entity.

(i) Employee shall not disclose or use confidential information obtained during his employment after the termination of his employment;

(ii) During his employment and for two (2) years after his termination, Defendant will not solicit "employer's" clients and will not render similar services to "employer's clients"; and

(iii) Defendant agrees "that for a period of two (2) years following termination of employment" he will not solicit employees of McGladrey or offer such employees alternate employment.

Interestingly, the CANS Agreement contained no provision pertaining to its assignability, but did provide that it would be governed by the laws of Iowa.

Attached to the Bill of Complaint and supplied in response to a Motion Craving Oyer are all or most of the corporate documents and appendices which were used to complete this fairly complex sale and assignment of tangible and intangible assets and contractual rights and obligations. In addition, Plaintiffs have filed a Bill of Particulars. All of these documents constitute part of the well pleaded facts which may be considered in ruling on the demurrer. See Bryson, *Virginia Civil Procedure* (3d ed.) at pp. 223-24.

The basic transactional document is the Asset Purchase Agreement which has attached nine schedules and subsidiary agreements. The Asset Purchase Agreement provides that the "Harrisonburg assets" which would be transferred to PBGH[2] consisted of the following:

(i) existing client relationships served by the Harrisonburg office;

(ii) unbilled work in progress;

(iii) equipment and furniture located in the Harrisonburg office;

---

[2] The Asset Purchase Agreement actually speaks in terms of McGladrey's completing the entire transaction with Mensel Dean, C.P.A., its Harrisonburg partner. However, this arrangement was apparently for tax reasons, and Mensel Dean, simultaneously with or shortly after the closing, transferred the acquired assets to PBGH, and Mensel Dean himself joined PBGH as a partner. All parties agree that this use of an intermediary does not affect the substantive rights involved in this litigation. Therefore, in this ruling, the transaction will be, for simplicity's sake, described as a transfer from McGladrey to PBGH.

(iv) "all employment contracts between McGladrey and its employees located in Harrisonburg on January 1, 2001, to the extent such contracts are assignable"; and

(v) miscellaneous assets used in the Harrisonburg office, including supplies and phone and facsimile numbers.

The Asset Purchase Agreement also provided that at closing:

McGladrey shall execute and deliver an assignment of the client relationships. ... and *employment contracts* in the form attached as Exhibit I. Harrisonburg Partner shall assume the client relationship and employment contracts by executing and delivering the Assignment and Assumption Agreement on the form attached hereto as Exhibit I.

(Emphasis added.)

The Assignment and Assumption Agreement (Exhibit I, referred to *supra*) provided in pertinent part:

Whereas, pursuant to the Purchase Agreement has agreed to assign all of its rights, title, and interests in and to its client relationships, unbilled WIP, and *employment contracts* with its Harrisonburg employees. . . .

Now, therefore ... it is hereby agreed that:

(1) ASSIGNMENT. McGladrey hereby assigns to Harrisonburg Partner all of its rights, title, and interests in and to the Harrisonburg assets ... including, but not limited to, client relationships, good will, unbilled WIP, and *employment contracts with Harrisonburg employees.*

(Emphasis added.)

The Bill of Complaint alleges that Defendant on or about December 10, 2000, downloaded without authority and kept certain computer data files which contained competitively sensitive information. The Bill of Complaint further alleges that during December 2000 and through January 2001, Defendant Shrader "solicited" three employees of McGladrey who became employees of PBGH on January 15, 2001, to join him in a new accounting business he was starting. On February 9, 2001, one of these employees, Serina

Downey, quit PBGH and joined Defendant at his new business. Also, the Bill of Complaint alleges that Defendant solicited "clients of Plaintiff's by a letter dated January 19, 2001, and by oral and personal solicitation that occurred prior to and after January 19, 2001." (Bill of Particulars ¶ 1.)

## II. *Defendant's Demurrer*

### A. *Misjoinder of Claims*

As previously noted, Defendant has challenged all five counts of the Bill of Complaint by demurrer. His first attack is that the Plaintiffs have misjoined causes of actions arising out of the different transactions and occurrences. It is true that the Bill of Complaint contains contract and tort causes of action arising out of conduct running from mid-December of 2000 (downloading confidential computer files) and running through January and February of 2001 (hiring of Serina Downey).

In Virginia, the common law rules on misjoinder of claims and multifariousness have been replaced by statute. Section 8.01-272 of the Code provides that:

> In any civil action, a party may plead as many matters, whether of law or fact, as he shall think necessary. A party may join a claim in tort with one in contract provided that all claims so joined arise out of the same transaction or occurrence. The court in its discretion, may order a separate trial for any claim. . . .

Defendant contends that the various causes of action alleged here do not arise out of the "same transaction or occurrence" because the events occurred over at least a two or two and a half month period (December 2000 to mid-February 2001). In addition, the factual underpinnings of the claims run the gamut from allegedly downloading confidential data from a computer, soliciting various clients, and soliciting McGladrey and/or PBGH employees to defect to Defendant's new business, and a general business conspiracy.

There is not a great deal of case law in Virginia dealing with the metes and bounds of "the same transaction or occurrence," because it is "statutory language so plain and unambiguous that it requires no interpretation." *Powers v. Cherin*, 249 Va. 33, 37 (1995). However, the cases make it clear that § 8.01-272 does not require all of the claims to be based on identical facts. Such a restrictive

reading of § 8.01-272 would result in an unnecessary fragmentation of litigation. The areas of complex real estate, commercial transactions, or corporate reorganizations, and other such complex, multi-party transactions usually involve transactions that unfold over time and involve multiple parties. See, e.g., *Fox v. Deese*, 234 Va. 412 (1987) (Events transpiring from late May 1980 to July 4, 1980, constituted same transaction or occurrence.). Similarly, this suit involves the plaintiffs' assertions that the Defendant at or about the time of the termination of his employment at McGladrey violated various provisions of two contracts and committed various torts. All of these acts were supposedly undertaken to permit Defendant to benefit impermissibly and illegally from his former employer. These are claims arising out of the same transaction or occurrence.

It is clearly efficient and logical for all of these matters arising from this transaction to be disposed of in one lawsuit. Therefore, the Defendant's demurrer to the extent it is based on the claim of misjoinder is overruled.

B. *Breach of Confidentiality and Non-Solicitation Agreement*

A great deal of the briefing and oral argument in this case has dealt with the issue of the assignability of personal service contracts (such as the Employment Agreement and the CANS Agreement) under Iowa law. A subsidiary issue addressed is whether Iowa law (if it does permit assignment) should be permitted to override the Virginia rule of non-assignability of personal service contracts (if there be such a rule).

However, a preliminary and determinative question is whether the CANS Agreement was ever assigned to PBGH? None of the transactional documents attached to or produced in response to the Motion Craving Oyer, which will be read as if incorporated in the Bill of Complaint, provides for the CANS Agreement to be assigned or transferred to PBGH. The transactional documents do provide for transfer of "employment contracts," but no reference is made to the CANS Agreement.

It is an undisputed fact that the Defendant signed two separate agreements on December 1, 1997, and these two agreements were signed by McGladrey on December 29, 1997: the Employment Agreement and the CANS Agreement. The CANS Agreement never having been assigned to PBGH means that PBGH has no standing to bring any claim for damages resulting in the breach of that agreement. Therefore, Defendant's demurrer to the Plaintiff PBGH's claims in Count I, Count II, and Count III is sustained.

The more interesting question is whether McGladrey may maintain an action on the CANS Agreement which is still its property? The documents which have been submitted as part of the pleadings to be considered in ruling on the demurrer provide that as of January 15, 2001, McGladrey sold to its Harrisonburg office its clients and the work in progress to PBGH. In addition, · in Section 11 of the APA, McGladrey covenants not to open an office within a sixty mile radius of Harrisonburg and not to directly or indirectly solicit the clients of PBGH. In short, McGladrey has withdrawn from the Harrisonburg market and the more than 11,000 square mile area surrounding Harrisonburg.

The law governing the validity and enforceability of non-competition agreements is well developed in the Commonwealth of Virginia. Non-competition or non-solicitation agreements are generally disfavored in the law because they restrict competition and prevent people from practicing their calling. See, e.g., *Modern Environments, Inc. v. Stinnett*, 263 Va. 491 (2002); *Richardson v. Paxton Co.*, 203 Va. 790, 795 (1962); *Alston Studios, Inc. v. Lloyd V. Gress & Assocs.*, 492 F.2d 279, 283 (4th Cir. 1974) (applying Virginia law). In determining the legal validity of a non-competition agreement, the Supreme Court in *Simmons v. Miller*, 261 Va. 561 (2001), held that three inter-related criteria must be analyzed.

> To determine whether a non-competition agreement may be enforced, a chancellor must consider the following criteria:
>
> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than necessary to protect the employer in some legitimate business interest?
>
> (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?
>
> (3) Is the restraint reasonable from the standpoint of a sound public policy?

*Id.* at 580-81.[3]

---

[3] There is no suggestion that the law of Iowa in this regard is any different than that of Virginia; therefore, Virginia law will be analyzed. Interestingly, the Supreme Court of Iowa in *Lamp v. American Prosthetics, Inc.*, 379 N.W.2d 909 (Iowa 1986), stated: "In deciding whether to enforce a restrictive covenant, the court will apply a three-pronged test: (1) Is the restriction reasonably necessary for the protection of the employer's business; (2) is it unreasonably restrictive of the employee's rights;

As the undisputed allegations of the Bill of Complaint and the subsequent Bill of Particulars demonstrate, McGladrey has abandoned the Harrisonburg market, and Defendant has opened an office for accounting in Harrisonburg and has solicited clients which McGladrey transferred to PBGH on January 15, 2001. Clearly, the restraints imposed by the CANS Agreement cannot be considered reasonable under this set of circumstances. The restraint appears to be clearly "greater than necessary to protect the employer in some legitimate business interest" because McGladrey does not do business in Harrisonburg, will not open an office in Harrisonburg until at least December 31, 2005, and has sold all of its Harrisonburg clients to PBGH.

The Court is mindful that it may not sustain a demurrer on any "grounds other than those stated specifically in the demurrer." § 8.01-273. The Plaintiffs also correctly observe that Defendant has not challenged the CANS Agreement as being unenforceable because it is overly-restrictive or unreasonable. However, Defendant has demurred to the ability of McGladrey to maintain an action on the CANS Agreement for actions occurring after January 15, 2002. See *Defendant's Restated Demurrer and Memorandum in Support of Demurrer and Restated Demurrer* (March 5, 2003) at pp. 9-10. *See also*, *Defendant's Demurrer* (November 5, 2002) at pp. 4-6. Under the circumstances present in the instant proceeding, the Court is of the opinion that Plaintiff McGladrey is on full and fair notice that its rights to enforce the CANS Agreement was put in issue by the demurrer and restated demurrer.

Therefore, the demurrer is sustained as to McGladrey's claims in Count I, II, and III, all of which are based on a breach of the CANS Agreement.

## C. *Claims Under Virginia's Computer Crimes Act*

Defendant demurrers to the Plaintiffs' claims in Count IV of violating the VCCA, §§ 18.2-152.1, *et seq.* on three basis:

(1) Defendant had a right to access the computer and therefore was not a person "without authority" to access the computer;

(2) PBGH has no standing to bring such a claim because it was not the owner of the computer data until January 15, 2001; and

(3) Punitive damages may not be recovered under § 18.2-152.12.

and (3) is it prejudicial to the public interest? *See Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 381 (Iowa 1983); *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 369 (Iowa 1971); *Baker v. Starkey*, 259 Iowa 480, 493, 144 N.W.2d 889, 897 (1966)." *Id.* at p. 910.

The Virginia Computer Crimes Act prohibits, *inter alia*, any person "without authority" to use a computer or computer network to "make ... an unauthorized copy ... of computer data. ... ." Va. Code § 18.2-152.4. The term "without authority" refers to a person who uses a computer without permission or, if the person has some right to use the computer, "uses a computer ... in a manner exceeding such right or permission." Va. Code § 18.2-152.2. It is undisputed in the pleadings that prior to January 15, 2001, Defendant had permission to use McGladrey's computers for legitimate business purposes, but had no authority to use McGladrey's computers for purposes not authorized by his employer and inimical to his employer's best interest. The case law makes clear that when a person exceeds the scope of the permission he or she has to use a computer, that use is a trespass in violation of Va. Code § 18.2-152.4. For example, in *Barnes v. Commonwealth*, 2000 Va. App. Lexis 204 (2000), the police officer clearly had authority to access the VCIN computer in her line of work; however, she did not have authority to access VCIN to help her brother conceal a stolen car. Therefore, to the extent Defendant's demurrer asserts that no claim is stated because Defendant had authority to use the computer and to download the data, the demurrer is overruled.

The computers in question belonged to McGladrey until they were sold on January 15, 2001, to PBGH. The pleadings and Bill of Particulars do not assert that Defendant did any downloading from the computer on or after January 15, 2001. Thus, the cause of action accrued to McGladrey and was not assigned or transferred to PBGH by the Asset Purchase Agreement, Bill of Sale, or Assignment Agreement. Therefore, PBGH has no standing to bring a claim under the Virginia Computer Crimes Act. Therefore, the demurrer directed to PBGH's claim under Count IV is sustained.

The last challenge to Count IV is Defendant's claim that the Virginia Computer Crimes Act only permits an injured party to recover for "damages sustained" and because punitive damages are not "damages sustained" by Plaintiffs, they cannot recover punitive damages under the statute. Defendant cites to two federal cases which held that punitive damages were not permitted in a retaliatory discharge case under Va. Code § 65.2-308. *Dunn v. Bergen Brunsweig Drug Co.*, 848 F. Supp. 645 (E.D. Va. 1994), and *Valentine v. Roanoke Podiatry and Foot Surgery, P.C.*, 1997 U.S. Dist. Lexis 8064 (W.D. Va. 1997).

Those cases, however, deal with a statute which provides that in an action under the Workers' Compensation Act, the Court "shall have jurisdiction ...

to order appropriate relief, *including actual damages. . . ."* Va. Code § 65.2-308(B) (emphasis added). The Virginia Computer Crimes Act provides that an injured party may recover in a civil action "for any damages sustained." Va. Code § 18.2-152.12(A). There appears to be no Virginia case law directly on point on this issue. During the embryonic stages of the common law development of the concept of punitive, exemplary, or vindictive damages, the Virginia courts held that punitive damages were a form of compensatory damages. *Borland v. Barrett,* 76 Va. 128, 134 (1882) ("Such damages, although sometimes denominated vindictive, are in their nature compensatory as much as those given for bodily pain, loss of time, and expense incurred."). *See also, Turk v. Martin,* 124 Va. 103 (1918).

However, from its early days, the Virginia law of punitive damages has come a long way. Now, the legislature has clearly differentiated between compensatory and punitive damages by placing a statutory cap on punitive damages. Va. Code § 8.01-38.1. Also, awards of punitive damage, unlike compensatory damages, are subject to constitutional scrutiny under the Fifth Amendment. *E.g., Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1 (1991); *Johnson v. Hugo Steakway,* 949 F.2d 1338 (4th Cir. 1991), *aff'd in part, rev'd in part upon reh'g en banc,* 974 F.2d 1408 (4th Cir. 1992).

Also, the Virginia legislature, when it has created new causes of action and intends to allow punitive damages, it seems to specifically provide for such damages. *E.g.,* Va. Code § 8.01-40 (punitive damages for knowingly misusing a person's name); Va. Code § 8.01-42.1 (punitive damages for injuries motivated by racial, religious, or ethnic animosity); Va. Code § 8.01-42.3 (punitive damages allowed for stalking victims if compensatory damages are recovered); Va. Code § 8.01-44.5 (exemplary damages allowed in certain DUI cases); Va. Code § 8.01-46.1(B) (punitive damages against employer who violates Va. Code § 8.01-46.1(A) by disclosing employment related information in bad faith). This seems to indicate a clear pattern on the part of the Legislature to specifically provide for punitive damages in a statute when such damages are to be permitted for newly created statutory causes of action. This leads this Court to conclude that punitive damages are not permitted under the Virginia Computer Crimes Act.

Therefore, Defendant's demurrer to the McGladrey claim for punitive damages under the Virginia Computer Crimes Act is hereby sustained.

D. *Plaintiffs' Claim of Unfair Competition and Tortious Interference with Business Relations*

The Defendant demurs to the unfair competition and tortious interference with business relations claim on the basis that Plaintiffs have not stated a *prima facie* case because they have not alleged:

(1) the existence of a valid contractual relationship or business expectancy;

(2) knowledge of the contract or expectancy by the alleged interferor;

(3) intentional interference inducing or causing a breach of the relationship or expectancy; and

(4) resultant damages.

See, *e.g.*, *Williams v. Dominion Technology Partners, L.L.C.*, 265 Va. 280 (2003); *Glass v. Glass*, 228 Va. 39 (1984).

The well pleaded facts show that McGladrey had a contract to sell its operations and clients in Harrisonburg to PBGH and that both McGladrey and PBGH had a reasonable expectancy that this could be done without a McGladrey employee's purloining confidential client information before the sale on January 15, 2001, and using it both before and after January 15, 2001, to solicit clients of the Plaintiffs. The unfair competition and tortious interference alleged in this Count may, if proven, provide the improper methods discussed in *Duggin v. Adams*, 234 Va. 221 (1986), and its progeny.

Therefore, Defendant's demurrer to Count V is overruled.

### III. *Conclusion*

In summary, the demurrer to Plaintiff McGladrey's Bill of Complaint is sustained as to Counts I, II, and III; the demurrer is sustained as to McGladrey's request for punitive damages in Count IV; and the demurrer is overruled as to Count V.

The demurrer to PBGH's Bill of Complaint is sustained as to Counts I, II, III, and IV and is overruled as to Count V.

The Clerk is directed to send attested copies of this Opinion and Order to Glenn M. Hodge, Esquire, Wharton, Aldhizer & Weaver, counsel for Plaintiffs, and to Timothy E. Cupp, Esquire, Cupp & Cupp, P.C., counsel for Defendant.

This case is placed on the Court's Motions Day Docket on September 2, 2003, at 9:00 a.m., or as soon thereafter as it is called to be heard, for purposes

of setting a trial date and entering a pretrial order.