# IN THE COURT OF APPEALS OF IOWA

No. 21-0870
Filed July 20, 2022

**JOHN MATTHEW GLASCOCK, M.D.,**
    Plaintiff-Appellant,

**vs.**

**COVENANT MEDICAL CENTER, INC., WHEATON FRANCISCAN HEALTHCARE-IOWA, INC. and MERCY HEALTH NETWORK, INC.,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea Dryer, Judge.

A doctor appeals the district court's award of damages and attorney fees to his former employer for breach of his non-competition agreement. **AFFIRMED.**

Adam J. Babinat of Redfern, Mason, Larsen & Moore, P.L.C., Cedar Falls, and Mark W. Fransdal, Cedar Falls, for appellant.

Michael R. Reck and Espnola F. Cartmill of Belin McCormick, P.C., and Stephen H. Locher, Des Moines, for appellee.

Heard by May, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Dr. John Matthew Glascock appeals the district court's award of damages and attorney fees to his former employer for breach of his non-competition agreement. Dr. Glascock contends the court committed several errors at law in determining whether and how much to award the employer and abused its discretion in awarding attorney fees. Finding no such error or abuse of discretion, we affirm and confer an additional award for appellate attorney fees.

## I. *Background Facts and Proceedings.*

In October 2002, Dr. Glascock entered into an employment agreement with Covenant Medical Center, Inc.[1] The contract secured Dr. Glascock's services for Covenant "and its Affiliates"—a term defined to include Covenant and Sartori Memorial Hospital (Sartori). In fact, the contract required Dr. Glascock to participate in the general surgery call schedule both at Covenant and at Sartori, where he was to start the area's only bariatric surgery program at the direction of and in conjunction with Covenant's administration. Covenant and Sartori are separate corporate entities but are affiliated by common ownership. Sartori's revenue flows into a single bank account shared with Covenant.

In exchange for the investment necessary for Covenant to open a new surgical practice, Dr. Glascock's employment agreement contained a non-compete clause, which restricted him from engaging in a medical practice in his area of specialty for a period of eighteen months after his separation within a

---

[1] Covenant is one of the corporate entities owned by a holding company now called MercyOne Northeast Iowa, previously known as Wheaton Franciscan Healthcare-Iowa, Inc., which Mercy Health Network, Inc. owns. These co-defendant/appellees will collectively be referred to as "Covenant."

twenty-five mile radius. A buy-out provision could have relieved Dr. Glascock of the non-compete restriction in exchange for one year's compensation. The contract also prohibited employee solicitation and provided Covenant with ownership of information regarding its bariatric practice and employees. Finally, the contract provided that the cost of enforcing any claims thereunder, including reasonable attorney fees, could be recovered by the prevailing party.

The combination of general and bariatric surgery led to Dr. Glascock's burn out and frustration. He attempted to resign from general surgery in July 2016 to no avail. In late 2017 and early 2018, Dr. Glascock gave Covenant an ultimatum: either he be released from general on-call surgery obligations, or he would resign altogether. Although senior leadership from Covenant offered to work with Dr. Glascock to address concerns at that time, Dr. Glascock refused and tendered his resignation effective June 27, 2018. In March, Dr. Glascock requested Covenant release him from the non-compete clause, but he was unwilling to pay the buy-out price. When Covenant refused, Dr. Glascock filed a petition for declaratory judgment and injunctive relief, seeking to have the clause declared unenforceable. Covenant counterclaimed to request injunctive relief and damages. On June 28, the district court denied both parties' requests for temporary injunctive relief but found Covenant likely to prevail on the merits.

In July, Dr. Glascock began working as a bariatric surgeon less than twenty-five miles away at Waverly Health Center (Waverly). Covenant did not succeed in replacing Dr. Glascock until nearly two years after his departure. One bariatric surgeon was hired but ultimately worked for less than two months in 2018 before being fired for misconduct. Throughout this time, Covenant interviewed candidates

and offered the position to two other individuals, who each indicated they turned it down for personal reasons. With no surgeon, staff hours at the bariatric surgery clinic became fewer until the clinic closed and lost its accreditation about one year after Dr. Glascock's separation. Four staff members from Covenant's bariatric surgery program left their positions to join Dr. Glascock at Waverly. He recommended each of them to his new employer. At least two employees indicated job security motivated their transition when it became clear a replacement surgeon was not coming immediately.

Dr. Glascock filed a second suit against Covenant in July 2018 pertaining to abuse of process, quantum meruit, and failure to properly pay him. This case was consolidated with the first action, and the case was tried to the bench in November 2020. In 2021, the court entered an order for judgment in favor of Covenant in the amount of $507,000 plus interest and reasonable attorney fees in the amount of $660,517. Dr. Glascock filed a timely appeal.

## II. Review.

"[O]ur review of a decision by the district court following a bench trial depends upon the manner in which the case was tried to the court." *Dix v. Casey's Gen. Stores, Inc.*, 961 N.W.2d 671, 680 (Iowa 2021) (alteration in original) (citation omitted). Both parties agree this case was tried at law, and therefore, we review for corrections of error at law. *Id.* The factual findings made by the district court are binding if supported by substantial evidence. *Chrysler Fin. Co. v. Bergstrom*, 703 N.W.2d 415, 418 (Iowa 2005). "Evidence is substantial if a reasonable person would accept it as adequate to reach a conclusion." *Id.* With respect to attorney

fees, we review for abuse of discretion. *Ferguson v. Exide Techs., Inc.*, 936 N.W.2d 429, 431 (Iowa 2019).

### III. Discussion.

#### A. Enforcement of Non-Compete Clause.

Iowa law generally disfavors non-compete agreements because they "are viewed as restraints of trade which limit an employee's freedom of movement among employment opportunities . . . ." *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 761 (Iowa 1999). "In deciding whether to enforce a restrictive covenant, the court will apply a three-pronged test: (1) Is the restriction reasonably necessary for the protection of the employer's business; (2) is it unreasonably restrictive of the employee's rights; and (3) is it prejudicial to the public interest?" *Lamp v. Am. Prosthetics, Inc.*, 379 N.W.2d 909, 910 (Iowa 1986). The test is essentially a reasonableness standard with the burden of proof on the employer who seeks enforcement. *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 381 (Iowa 1983). Dr. Glascock challenges the first and third prongs, arguing Covenant did not have a protectable business interest in a bariatric surgery clinic and closing such a clinic in the midst of an obesity epidemic is prejudicial to the public interest. The district court disagreed in both regards, and we find no legal error in its conclusions.

Dr. Glascock claims Covenant lacked a legitimate, protectable business interest because it effectively abandoned his non-compete provision by discontinuing the business in which he was employed. *See id.* at 380 ("Abandonment of a valid contract may be accomplished by . . . conduct inconsistent with the continued existence of the original contract . . . ."). He

highlights the bariatric surgery clinic's effective closure and unprofitable returns for Covenant. However, we find Covenant's actions were not inconsistent with the non-compete agreement. Although recruiting was unsuccessful, Covenant's continued efforts to recruit a bariatric surgeon and maintain the clinic demonstrate its intent to carry on the business and desire to remain protected under the non-compete clause. Covenant's post-resignation actions contrast starkly with the Indiana case cited by Dr. Glascock in which an employer voluntarily discontinued anesthesia services prior to its employees' departure and was therefore deemed to have abandoned its interest in a non-competition agreement. *See Great Lakes Anesthesia, P.C. v. O'Bryan*, 99 N.E.3d 260, 271–72 (Ind. Ct. App. 2018). Accordingly, we find Covenant did not "unequivocally and decisively relinquish[ ] their rights under the covenant." *See Jindrich*, 338 N.W.2d at 380.

Similarly, we find the non-compete clause was not prejudicial to the public interest. Although obesity is a serious public health concern, its importance does not summarily preclude non-compete agreements across the entire industry. *See, e.g.*, *Cogley Clinic v. Martini*, 112 N.W.2d 678, 681 (Iowa 1962) ("For many years restrictive covenants between doctors have been recognized as valid and enforceable."); *Cedar Valley Med. Specialists, PC v. Wright*, No. 18-1900, 2019 WL 5063325, at *4 (Iowa Ct. App. Oct. 9, 2019) (enforcing a non-compete restriction against a cardiothoracic surgeon). Therefore finding no error in the prongs identified, we conclude the non-compete provision was enforceable.

*B. Affiliate Recovery.*

Dr. Glascock argues the district court erred in finding Covenant could recover the losses of its affiliate, Sartori. Dr. Glascock proved both Covenant and

Sartori separately filed tax returns as its own corporate entity. Likewise, he elicited testimony that all of his surgeries were performed at Sartori, thus all revenue calculated as damages by the expert at the trial flowed to Sartori. Thus, under this record, Dr. Glascock asserts Covenant should not be able to claim damage over the loss of surgeries to Sartori. But, this contention ignores the internal workings of these groups as a medical center with affiliates. The finance director described the flow of the income:

> Q. What happens to the cash received for the revenue generated from work performed at Sartori? A. It goes into a single bank account. That single bank account goes towards all of the revenue or income we receive from all of the operations of MercyOne Northeast Iowa. So including Sartori, Covenant, Mercy Hospital in Oelwein, and the medical group operations or the clinic operations.
> . . .
> Q. And from your perspective as the vice president of finance for MercyOne Northeast Iowa, what is the distinction between cash received from revenues generated at Covenant and cash received from revenues generated at Sartori? A. There is no difference.

The contract named Sartori as an "affiliate" and Dr. Glascock agreed:

> that Physician's services on behalf of the Clinic and its Affiliates generate sufficient income to the Clinic for the Clinic to pay Physician's compensation and fringe benefits, as well as help cover the Clinic's overhead expenses related to Physician. Thus, the parties acknowledge that if Physician left the employment of Clinic and competed with Clinic or its Affiliates, Clinic's obligations would continue and the revenue that Physician was generating would be lost to Clinic for a period of time for a number of reasons . . . .

Likewise, the contract expressly protected these revenues generated from all sources, including the affiliates, in the language defining the noncompete restrictions:

> Physician understands, acknowledges and agrees that: . . . the covenants contained herein, and Clinic's remedies provided herein, if the covenants contained in this Agreement are violated, are

reasonable, necessary and appropriate to protect Clinic, its Affiliates and their employees, and are not a penalty.

We also rely upon longstanding Iowa precedent allowing one party to a contract to sue in its own name on behalf of another party benefitting from the contract. *See, e.g.*, *West v. Hartford Fire Ins. Co.*, 83 N.W.2d 465, 470 (Iowa 1957) (finding "one in whose name a contract is made for the benefit of another or the beneficiary of such contract, may be a party plaintiff to enforce the contract"). In fact, Iowa Rule of Civil Procedure 1.201 expressly authorizes this practice:

> Every action must be prosecuted in the name of the real party in interest. But an executor, administrator, conservator, guardian, trustee of an express trust, or a party with whom or in whose name a contract is made for another's benefit, or a party specially authorized by statute may sue in that person's own name without joining the party for whose benefit the action is prosecuted.

Here, we recognize Dr. Glascock's employment contract was executed by Covenant but benefitted Sartori by securing his services at its facility. The contract also expressly indicated it was to cover "Affiliates." For these reasons, we find no error in Covenant's enforcement and recovery under the contract.

*C. Causation.*

Dr. Glascock maintains that Covenant cannot sufficiently tie its awarded damages to having resulted from his breach of the non-compete clause. He suggests that any financial loss was the consequence of losing a bariatric surgeon rather than from his violation of the restrictive covenant. However, "[t]here are economic losses to a clinic if a medical provider can transition without penalty across the street to practice." *Wright*, 2019 WL 5063325, at *4. Although the loss of a surgeon would certainly constitute the underlying impetus for financial loss,

the subsequent opening of a substantially similar surgical practice in a limited market within this geographic proximity almost certainly contributes to the sustained nature of the loss. Dr. Glascock agreed as much by executing his contract, which acknowledged the loss that Covenant would face should he leave and become a competitor and valued that loss based upon twelve months of compensation averaged over the last three years—a calculation which results in an amount even greater than that awarded by the district court. Accordingly, we find substantial evidence supports the district court's conclusion on causation.

*D. Damage Calculation.*

Dr. Glascock argues the damage calculation for the replacement of Covenant's bariatric clinic staff was erroneous because it was based on an incomplete analysis. Covenant alleged Dr. Glascock improperly solicited employees causing Waverly to hire away all but one member of its bariatric clinic staff. The measure of damages presented for replacement of the staff was based on Covenant's incremental recruiting and training costs to replace one employee in particular, Kim Franzen. The district court relied on expert analysis regarding training and orientation costs but failed to compare the compensation received by Franzen and the replacement employee. Without offering any expert analysis of his own, Dr. Glascock alleges the replacement employee could have been less experienced and paid a lower hourly rate, allowing Covenant to recoup some of its loss. However, damages of this nature are admittedly difficult to calculate with mathematical precision and require a certain degree of flexibility. *See Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 310–11 (Iowa 1998) (finding the necessarily imprecise calculations required when determining damages for business torts such

as misappropriation of trade secrets "rest in the sound discretion of the [fact-finder] based upon a fair and impartial consideration of all the evidence"). We are unconvinced by Dr. Glascock's speculation and find substantial evidence sustains the district court's conclusion.

*E. Attorney Fees.*

Dr. Glascock asserts that attorney fees were improperly awarded to Covenant beyond the scope of his employment agreement. He bases this contention on Covenant's shortcoming at the preliminary injunction stage and his contract arguably providing fees pertaining only to the non-competition clause. However, the parties' contract purported to confer costs of enforcement to the prevailing party in connection with "the provisions of this Agreement," which we find invoked the contract as a whole. Moreover, "status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares . . . along the way. . . . The court may properly award any fees incurred in the litigation involving 'a common core of facts' or 'based on related legal theories.'" *Lee v. State*, 874 N.W.2d 631, 647–49 (Iowa 2016) (internal citations omitted). We find the district court did not "rest[ ] its discretionary ruling on grounds that are clearly unreasonable or untenable." *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 732 (Iowa 2005). Therefore, we affirm the award of trial attorney fees.

Because Covenant defended the district court's judgment on appeal, we furthermore grant Covenant's request for appellate attorney fees in the amount set forth in the corresponding affidavit. *See Bankers Tr. v. Woltz*, 326 N.W.2d 274,

278 (Iowa 1982) ("The same rationale under section 625.22, which justifies awarding fees in the trial court, also justifies awarding attorney fees in this appeal—the written agreement provided for attorney fees and in no way limited them to costs in the trial court.").

## IV. Disposition.

We find no error at law in the enforcement of this non-compete clause or affiliate recovery by a party to the employment contract. We furthermore find substantial evidence supports the district court's decisions on causation and damage calculation. No abuse of discretion occurred in the award of trial attorney fees, and we confer an additional award for appellate attorney fees.

**AFFIRMED.**