# IN THE COURT OF APPEALS OF IOWA

No. 21-0893
Filed June 29, 2022

**MILTNER INSURANCE SERVICES, LLC,**
Plaintiff-Appellant,

**vs.**

**CASEY M. ROBERTS,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Adams County, Bradley McCall, Judge.

An employer appeals a district court decision denying its breach-of-contract claim. **REVERSED AND REMANDED.**

Robert J. Engler of Cambridge Law Firm, P.L.C., Atlantic, for appellant.

Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellee.

Considered by May, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

An employee signed a non-piracy agreement requiring her to return all confidential documents to her employer upon her termination. But after she quit her job, the employee kept an electronic copy of the employer's client list and then opened a competing business just down the street. The employer sued for breach of contract. On the claim relevant to this appeal, the district court found the employee's "mere possession" of the client list after her termination was not a breach of the non-piracy agreement. Because we conclude mere possession was a breach, we reverse and remand.

I.      **Background Facts and Proceedings**

Casey Roberts began her employment with Miltner Insurance Services, LLC[1] (Miltner) in 2012 as a customer service representative. Long-time employees Jayne Templeton and Katrina Ogburn collectively own Miltner, having bought it in January 2018. Nearly all the purchase price—$1.42 million out of $1.50 million— was attributable to the business's goodwill and client list. Shortly after the purchase, Miltner and Roberts entered into a non-piracy and trade secret agreement. The agreement prohibited Roberts from soliciting any of Miltner's accounts for two years after termination of her employment with Miltner. It also stated that Roberts could not "divulge, disclose, or communicate" any information about Miltner, including Miltner's customer list.

---

[1] The entity was known as Miltner Insurance Agency, Inc. when Roberts began her employment. The business was sold as a going concern in 2018, and the name was changed.

Roberts signed a second non-piracy agreement in December 2018. That agreement included, in part:

> CONFIDENTIALITY AND NON-DISLCOSURE. Employee shall at no time divulge or disclose any information regarding the business of the Corporation, including, but not limited to customer lists, renewal lists, information concerning customers, any other matter connected with or pertaining to the business of the Corporation. It is understood and agreed by the parties hereto that all such information . . . shall, at all times, remain the sole and exclusive property of the Corporation. Upon termination, Employee will return to Corporation all records or documents of any kind or character which contain, evidence or pertain to information regarding the business of the Corporation.
>
> NON-COMPETE—BUSINESS. Employee agrees that [ ] she will not, within the period of three (3) years following the date of [her] termination of employment . . . , directly or indirectly, by or for [ ] herself, or as the agent of another, or through all others as his/her agent: (a) divulge the names of [Miltner's] policy holders or accounts to any other person, firm or corporation; (b) in any way seek to induce, bring about, promote, facilitate, or encourage the discontinuance of or in any way solicit for on or behalf or [ ] herself or others, or in any way quote rates, accept, receive, write, bind, broker, or transfer any insurance business, policies, risk or accounts, written, issued, covered, obtained (whether through the efforts of the Employee or not) or carried by [Miltner].

The agreement provided for liquidated damages, injunctive relief, and legal expenses upon a breach. The liquidated-damages portion gave Miltner different remedies for breaches occurring in the first, second, and third years following termination of Roberts's employment.

Roberts sent Miltner's client list to her private email before she signed the second non-piracy agreement.[2]  Then, in January 2019, Roberts resigned from

---

[2] Roberts claims she was not planning to resign when she emailed the client list to herself but later kept it to make sure she was not soliciting Miltner's clients. At trial, Roberts testified that she deleted the client list upon receipt of a cease and desist letter from Miltner's counsel. Yet, a responsive letter sent from her counsel to Miltner in November 2019 suggested that Roberts still had the list since she offered to delete it upon Miltner meeting certain demands.

Miltner because she was upset the company hired a new employee who would be paid more than Roberts. She then accepted employment as an independent agent with a separate insurance group, where she sells insurance in the same fields as Miltner, from an office roughly two blocks away. Roberts conceded at trial that she was in direct competition with Miltner. But she testified that she has not solicited any of Miltner's clients. At trial, Miltner could not show which, if any, clients they lost to Roberts.

Miltner launched this litigation against Roberts in May 2020. The petition alleged five counts. The first two were for breach of contract relating to Roberts seeking to solicit clients on Miltner's client and renewal lists within the first and second years following termination of her employment, in violation of the non-compete provision of the agreement. Count three was for breach of contract for Roberts's retention of Miltner's client and renewal lists, in violation of the confidentiality and non-disclosure provision of the agreement. Count four was for breach of contract stemming from Roberts's retention of educational materials and an employee handbook, also in violation of the confidentiality and non-disclosure provision of the agreement. Count five sought injunctive relief.

The matter proceeded to trial. In its ruling, the district court found the December 2018 non-piracy agreement to be valid and enforceable, but the court determined it only prohibited Roberts from using Miltner's proprietary information to solicit clients from Miltner's customer base and from servicing current clients of Miltner. The court found Roberts's mere possession of the client list did not violate the agreement, and Miltner did not prove she used the client list to steal clients. Even so, the court found the evidence undisputed that Roberts took training

materials valued at $140 when she ended employment with Miltner. So the court entered judgment against Roberts and in favor of Miltner in that amount. Miltner appeals.

## II. Standard of Review

Because the answer to the question raised on appeal turns on contract interpretation and construction, our review is for errors at law. *Colwell v. MCNA Ins. Co.*, 960 N.W.2d 675, 676–77 (Iowa 2021); *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 683 (Iowa 2020). "We will reverse a district court's judgment if we find the court has applied erroneous rules of law, which materially affected its decision. In contrast, the district court's findings of fact are binding on us if they are supported by substantial evidence." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010) (internal citation omitted).

## III. Analysis

On appeal, Miltner only challenges the district court's determination under count three, that "[t]he mere possession by Roberts, for some period of time, of the Miltner . . . client list, was not a violation of the Non-Piracy Agreement" and "[o]nly the use of that client list to pirate clients from the agency was prohibited." Miltner maintains Roberts's post-termination possession of the client list was enough to amount to breach.

As a refresher, the agreement provided:

> Employee shall at no time divulge or disclose any information regarding the business of the Corporation, including, but not limited to customer lists, renewal lists, information concerning customers, any other matter connected with or pertaining to the business of the Corporation. It is understood and agreed by the parties hereto that all such information, customer lists, renewal lists, goodwill and information concerning customers shall, at all times, remain the sole

and exclusive property of the Corporation. Upon termination, Employee will return to Corporation all records or documents of any kind of character which contain, evidence or pertain to information regarding the business of the Corporation.

Miltner readily agrees the first sentence requires disclosure and, under that provision, "mere possession" of the client list is not enough to breach the agreement. But the final two sentences, according to Miltner, do make "mere possession" of the list after termination of employment a breach. Roberts responds that, under the circumstances, the principal purpose of the agreement was to prohibit divulging or disclosing the client list. While Roberts acknowledges the agreement required her to return the client list upon termination, she submits there was no breach because that purpose was not violated.

It is true, as Roberts points out, that "[w]ords and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." *Retterath*, 938 N.W.2d at 683 (alteration in original) (citation omitted). But this rule must yield to the foundational principle that "the most important evidence of the parties' intentions at the time they entered into the contract is the words of the contract." *NevadaCare*, 783 N.W.2d at 466. When reviewing the words of a contract, "[c]ourts must strive to give effect to all the language of a contract." *Fashion Fabrics of Iowa, Inc. v. Retail Invs. Corp.*, 266 N.W.2d 22, 26 (Iowa 1978).

> Because an agreement is to be interpreted as a whole, it is assumed in the first instance that no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.

*Id.* It is only when it is not possible to give effect to all parts of the contract that "the court will seek to interpret the contract in a way that will at least effectuate the principal or main apparent purpose of the parties." 11 Williston on Contracts § 32:9 (4th ed. May 2022 update).

Here, it is possible to give effect to all parts of the contract, as Miltner did when laying out its breach-of-contract claims. By focusing on the "principal purpose" of the parties, rather than the language of the contract itself as Roberts does, parts of the contract would be rendered superfluous. The agreement provides two separate mandates. The first sentence prohibits disclosure of proprietary information, including the customer list, "at any time," which would encompass both before and after termination. The final sentence requires Roberts to return any such proprietary information to Miltner upon termination. So the non-piracy agreement prohibits not just disclosure or use of the client list, but also possession of the list after employment ends.[3] The latter restriction prohibits exactly what Roberts admittedly did, emailing herself Miltner's client list and retaining—i.e., merely possessing—that list after terminating her employment with the company.[4] This is consistent with the district court's conclusion that Roberts

---

[3] This is not an anomalous concept. *Cf. Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 230 (Iowa 1977) (finding a customer list can be a protected trade secret); *Lemmon v. Hendrickson*, 559 N.W.2d 278, 281 (Iowa 1997) (considering an employment agreement requiring an employee to return customer lists upon ending employment).

[4] We also note the principle that "when a contract contains both general and specific provisions on a particular issue, the specific provisions are controlling." *Retterath*, 938 N.W.2d at 683 (citation omitted). But here, the provisions are speaking to different issues—disclosure of confidential information on the one hand, and retention of it following termination on the other. So there is no need to apply this rule.

violated the same provision by retaining an educational manual following her termination, although she testified that she later threw it away.

**IV.     Conclusion**

We find the district court's denial of relief under count three of Miltner's petition was error. We reverse and remand the case to the court to determine the damages and other relief to which Miltner is entitled.

**REVERSED AND REMANDED.**